[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (No. 103)
If a debtor defaults on an obligation payable in installments, when does the statute of limitations on installments due in the future begin to run? Surprisingly, this important commercial question has not been answered in Connecticut since 1787. It must now be addressed in this case. CT Page 4477
On February 5, 1990, the defendant, Michael V. Prodoti ("Prodoti"), who was purchasing an automobile, signed a retail installment contract with Crest Lincoln Mercury, Inc. ("Crest"). Prodoti agreed to pay Crest 60 monthly payments of $330.83 each. The first payment was due on March 7, 1990. The contract provides that, "You'll be in default if . . . [y]ou miss or are more than 10 days late with a monthly payment." It also provides that, "If you're in default, we can demand immediate payment of the unpaid total of payments." Prodoti made his payments until September 30, 1991, when he made the payment that had been due on September 7, 1991. He made no payments after that date. By that time, Crest had assigned the contract to the Bank of New Haven (the "Bank").
On November 8, 1991, the Bank wrote to Prodoti informing him that he owed $661.66 that it intended to repossess his automobile unless he paid that sum by November 18, 1991. It further informed him that if repossession occurred, the property would be sold at private sale pursuant to Conn. Gen. Stat. § 42-98 (1991) (now codified as amended at Conn. Gen. Stat. § 36a 785 (1997) and that he would be responsible for any deficiency pursuant to § 42-98 (g). Prodoti made no payment, and the Bank repossessed the automobile. (The actual repossession date does not appear; in the documents submitted by the parties.) The automobile was sold on February 20, 1992, leaving a deficiency balance allegedly owed by Prodoti.
The Bank subsequently assigned the contract and the deficiency balance allegedly due on the contract to The Cadle Company ("Cadle"). Cadle commenced this action against Prodoti on January 31, 1998. Cadle's complaint is in one count alleging breach of contract. On March 27, 1998, Prodoti filed the motion for summary judgment now before the court. The motion does not dispute the merits of Cadle's action but claims that the action is barred by the applicable statute of limitations. The motion was heard on April 13, 1998.
It is common ground that the applicable statute of limitations is Conn. Gen. Stat. § 52-576(a). That statute provides, in relevant part, that "[n]o action . . . on any contract . . . shall be brought but within six years after the right of action accrues." The obvious issue presented by this statute is when the cause of action in question accrued. Sec. 52-576(a) provides no guidance on this question. CT Page 4478
Neither party claims that the contract in question was a negotiable instrument within the meaning of Article 3 of the Uniform Commercial Code. The contract was not "payable to order or to bearer." Conn. Gen. Stat. § 42a-3-104(1)(d) (1989). See 2 James J. White Robert S. Summers, Uniform Commercial Code 71 (4th ed. 1995). Consequently, the accrual of cause of action provisions of Conn. Gen. Stat. § 42a-3-122 (1989) play no role in this analysis. The guiding principles are those of the common law.
Prodoti claims that the cause of action accrued on October 18, 1991. That is when he was 10 days late with the payment due on October 7, 1991, and was in default pursuant to the terms of the contract. The problem with this analysis is that it ignores the fact that, while Prodoti may have been in default on one installment, he still owed additional installments in the future. The fact that a cause of action may have accrued with respect to an installment in default does not necessarily mean that a cause of action has also accrued against future installments that are not even due.
This consideration is underlined by the terms of the contract in question here, which make acceleration of the total unpaid debt optional rather than mandatory on the creditor's part. The Bank's letter of November 8, 1991, makes it clear that the only amount considered due at that time was the sum of $661.66. It is also clear from the terms of the letter that no total unpaid balance would be due and owing until sale of the automobile had occurred. As mentioned, that latter date turned out to be February 20, 1992, a date within the six-year statute of limitations.
This analysis is consistent with a body of law that is deeply ingrained in Western legal thought. Legal archaeology on this issue yields impressively consistent results. Writing in the mid-eighteenth century, an influential French jurist explained what he termed the law of prescriptions:
 When a debt is payable at several terms, I see no inconvenience in holding, that the time of prescription begins to run from the expiration of the first term, for the part then payable, and for the other parts only from the day of expiration of the respective terms of payment. For instance, if you owed me 3000 livres, payable by three yearly installments, the prescriptions for one third of the debt would begin to run from the 1st January, 1735; for the second, CT Page 4479 from the 1st January, 1736; for the remaining third, from the 1st January, 1737; and the debt will be prescribed [on a thirty year statute], for the first, in 1765; for the second, in 1766, and for the last, in 1767.
1 Robert Joseph Pothier, Treatise on the Law of Obligations
496-97 (William David Evans trans.3d American ed. 1853) (1761).
Harris v. Thomas, Kirby 267 (Conn. 1787) (the first, and still the last, Connecticut authority on the subject) is to the same effect. The defendant in Harris had entered into a bond of recognizance for a putative father in a bastardy action. In defending a subsequent action on the bond, he raised a statute of limitations defense. The court dealt with that defense as follows:
 That more than a year had elapsed from the time of the final judgment against the principal, before the bringing this suit; this would ordinarily have exonerated the bail — but it did not exonerate him in this case. The judgment here, was for the quarterly payments, for four years from the birth of the child, and the recognizance held for the performance of the whole: The declaration, therefore, sets forth a good cause of action, and there is nothing disclosed by the defendant sufficient to bar recovery.
Kirby at 268-69.
Although many principles of law have changed profoundly since the eighteenth century, this one has not. See. eg., 18 Samuel Williston, Treatise on the Law of Contracts § 2026C at 787 (3d ed. 1978); Annotation, When Statute of Limitations begins torun against action to recover upon contract payable ininstallments, 82 A.L.R. 316 (1933). The rule of Harris v. Thomas
not only remains viable but is consistent with modern policy analysis. The New York Court of Appeals has recently explained that:
 If a creditor's action against a [debtor] accrues wholly and immediately at the point of the first default in payment — the six-year limitations period for any action against the [debtor] clocking in at that point — then creditors would be left with no alternative or incentive but to accelerate the entire debt or risk losing all opportunity to pursue [it]. The prudent commercial practice rule would keep in place incentives to the creditor to CT Page 4480 proceed with some flexibility in working with the debtor based on stipulated contractual provisions. In that dynamic, for example, parties might be able to continue to work toward amicable and fair resolutions between themselves rather than immediately drawing litigation swords and marching off to a courthouse.
Phoenix Acquisition Corp. v. Campcore, Inc., 612 N.E.2d 1219, 1222
(N.Y. 1993).
The Phoenix Acquisition policy analysis is consistent with the sound commercial practice followed by the Bank in this case. The Bank did not immediately accelerate the debt. In fact, no irreversible acceleration of the debt occurred until the automobile was sold on February 20, 1992. Until then, sufficient flexibility remained to accommodate some financial arrangement between the parties short of acceleration. Such flexibility is in the interest of both creditors and debtors and should plainly be encouraged.
It is undoubtedly true that the statute of limitations clock begins to run irreversibly when an optional acceleration clause is exercised by a demand of full payment before all installments become due. See Navy Federal Credit Union v. Jones,930 P.2d 1007, 1009 (Ariz.Ct.App. 1996), and authorities cited therein. As already mentioned, however, the documents submitted to the court in this case establish that that event did not occur until the sale of Prodoti's automobile on February 20, 1992. The six-year statute of limitations on the balance of the debt began to run on that date, and the action now before the court was, consequently, timely bought.
The motion for summary judgment is denied.
BLUE, J.