998 P.2d 55

**FIRST HAWAIIAN BANK, a Hawai'i corporation, Plaintiff–Appellee,**

v.

**Clarence A. POWERS, Jr., Defendant–Appellant.**

No. 21627.

Intermediate Court of Appeals of Hawai'i.

March 30, 2000.

As Amended April 3, 2000.

Clarence A. Powers, Jr., on the briefs, defendant-appellant, *pro se.*

Leslie C. Togioka and Steven T. Osa, on the briefs, Honolulu, for plaintiff-appellee.

WATANABE, ACOBA, and LIM, JJ.

Opinion of the Court by WATANABE, J.

The lawsuit which spawned this appeal was brought by Plaintiff–Appellee First Hawaiian Bank (FHB) to collect the amount allegedly owed by Defendant–Appellant Clarence A. Powers, Jr. (Clarence) under an automobile credit sale contract. Although Clarence (1) filed a written answer generally denying the allegations in FHB's complaint; (2) filed six separate motions to dismiss the complaint on grounds that the applicable statute of limitations had elapsed, the complaint was time-barred, and the complaint did not state a legitimate claim for relief; and (3) returned to Hawai'i from his mainland home several times to attend various pre-trial hearings, the District Court of the First Circuit (the district court) entered a default against Clarence when he allegedly failed to appear at a July 17, 1997 pre-trial conference. Subsequently, the district court granted FHB's non-hearing motion for default judgment against Clarence for $9,021.95 and then denied Clarence's motion to set aside the default judgment.

On appeal, Clarence contends that the district court abused its discretion when it refused to set aside the default judgment. Clarence also maintains that the district court was wrong to have denied his motions to dismiss the complaint against him.

We agree with Clarence.

## BACKGROUND

On March 23, 1990, Clarence purchased a used 1985 Volkswagen Jetta (the car) from Ala Moana Porsche Audi VW (Ala Moana VW) for $7,265.80. Clarence paid $700.00 in cash as a down payment and received a credit against the purchase price for $1,500.00, the net value of the 1978 Volkswagen Scirocco that he traded in to Ala Moana VW as part of the purchase. To finance the balance of the purchase price, as well as the cost of license plate fees and insurance premiums, Clarence entered into a Credit Sale Contract with FHB (the contract), pursuant to which he borrowed the

principal amount of $6,445.41 from FHB, agreed to pay interest at a fixed annual rate *of 16.50 percent per year on the decreasing unpaid principal balance*, and promised to repay FHB for the loan and finance charges in thirty-six monthly installments of $228.20.

Among the terms and conditions of the contract was the following:

> **NO TRANSFER OF YOUR CAR.** You will not sell or transfer your car or abandon it or remove it from the island in Hawaii [Hawai'i] where you first keep it without our written permission.

Clarence asserts that, in accordance with the foregoing provision, he contacted FHB in October 1990 to request permission to move the car to San Francisco, California because his job required him to relocate there. Clarence claims that he did not receive a response from FHB prior to his departure from Hawai'i. However, on January 16, 1991, FHB informed him that "he could not remove [the car] from the island and requested [the car] be returned to satisfy the note." Consequently, Clarence, through a friend, voluntarily surrendered the car to FHB on January 19, 1991.

On January 23, 1991, FHB sent a letter to Clarence at a Union City, California address, informing him, in relevant part, as follows:

> [The car] above was voluntarily surrendered.
>
> At this time, you need to keep in mind these three points.
>
> *First,* if you want to recover [the car], you must contact the Collection Officer at (808) 943–4539 and pay [FHB] the Total Amount Due before we sell [the car]. The Total Amount Due is the Net Payoff Balance shown above,[1] plus any interest on the loan accrued at the time you pay [FHB], plus any expenses we have incurred to repossess and sell [the car] and to prepare [the car] for sale.
>
> *Second,* if you do not take this first step, [FHB] will be forced to sell [the car]. If the sale amount is less than the Total Amount Due at that time, you will still owe

---

1. The Net Payoff Balance shown in the reference section of the letter was $5,468.03 as of the date of the letter.

the bank the difference. On the other hand, if the amount is more than the Total Amount Due at that time, you will be entitled to that surplus. The bank may sell [the car] at any time after February 6, 1991.

*Third,* please contact the Collection Officer at (808) 943–4539 within 30 days from the date of this letter to claim any personal property (if any) that was in [the car] at the time of repossession. Personal property will be disposed of if unclaimed after 30 days.

(Footnote added.)

According to FHB, it sold the car for $2,000.00 on April 18, 1991 at a private auction for automobile wholesalers and retailers. Thereafter, it sent a letter dated April 23, 1991 to Clarence, informing him that the amount received from the sale of the car was insufficient to cover the amount owed to FHB, and notifying him of the deficiency balance still owed to FHB.

Clarence denies receiving such a letter, and no copy of such a letter exists in the record on appeal. According to Clarence, the first correspondence he received from FHB after the January 23, 1991 letter was a letter dated May 31, 1996. The substance of that May 31, 1996 letter, which was signed by Claire Nagai, FHB Collection Representative, was as follows:

Re: ACCOUNT NO. 71477968
ACCOUNT BALANCE: $6642.09

Dear Mr. Powers Jr.

For some time, we have refrained from writing you regarding your indebtedness to [FHB]. We have done so in the belief that just as soon as you were in a position to resume payments on this obligation, you would do so.

Please remember, we are trying to help you, as well as ourselves, and are willing to accept payments according to your current ability to pay.

Could you start a repayment schedule now? Even if it is not as much as you would like to send, every bit helps.

Write or call today and let us know what we can do to help us both. We are enclosing a pre-addressed envelope for your convenience. Thank you.

On June 20, 1996, Clarence responded to the foregoing letter stating, in relevant part:

In 1990 [FHB] demanded repossession of my 1985 Volkswagen Jetta. In fact it was returned to [FHB] October/November in 1990. It was parked at the direction of [FHB] in Kapiolani [Kapiʻolani] Garage location.

I recieved [sic] no further communication in the next 5 and one half years.

I do not understand why [FHB] thinks there is a deficiency now owing, it would seem *whatever* [FHB] would have had in 1990 are barred by the passage of time.

I would be interested to know what you claim to be the outstanding balance then when the car was returned to [FHB]; what it's [sic] fair market value was, and what you did with it? I await your response.

(Emphasis in original.)

By a letter dated June 24, 1996, FHB responded to Clarence's inquiry by informing Clarence that the car was placed for sale after February 6, 1991 and sold for $2,000.00 on April 18, 1991, that the outstanding balance after the sale amounted to $3,922.38, and that "[t]he current balance with the accrued interest as of June 24, 1996 totals $6,679.29."

## PROCEDURAL HISTORY

On July 16, 1996, approximately five years and six months after Clarence had surrendered the car to FHB and about five years and two months after FHB claims to have notified Clarence that it sold the car at auction, FHB filed the underlying complaint against Clarence in the district court. In the complaint, FHB alleged that as of July 10, 1991, "the last date of indebtedness," Defendant owed FHB the amount of $3,427.96. FHB also alleged that Clarence owed FHB 1,831 days of interest at a 16.50 percent annual or $1.55 daily interest rate, for a total of $2,838.05. Finally, FHB requested attorney's fees and other costs. On August 20, 1996, FHB's attorney filed in the district court a "Proof of Service," attesting that the

complaint was served by certified mail on Clarence in Alameda, California on August 16, 1996.

The summons attached to the complaint informed Clarence that he was required

to appear before the District Judge of the First Circuit, Honolulu Division, at his/her Court Room 10B in Honolulu, at 1:30 o'clock p.m., on the second Monday following the date of service, and should such Monday be a legal holiday, then upon the next day.

The summons further notified Clarence:

IF YOU OR YOUR ATTORNEY FAIL TO ATTEND AT THE TIME AND PLACE DESIGNATED, DEFAULT AND DEFAULT JUDGMENT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

On August 26, 1996, the second Monday after he was served, Clarence, through attorney Lloyd Asato (Asato), appeared in the district court, as required by the summons, and orally entered a general denial to the complaint. The district court's docket reveals that because FHB's attorney was not present, the case was continued and a pretrial conference was set for 11:00 a.m. on November 4, 1996. On September 6, 1996, Clarence filed a written answer to FHB's complaint, which he signed "PRO PER." The answer generally denied the allegations set forth in the complaint and also alleged four affirmative defenses, among them the following:

2. Rule 3 of the Rules of the District Courts of the State of Hawai'i provides as follows:
**FORM OF PLEADINGS AND MOTIONS.**
(a) **Form.** All pleadings and papers to be filed shall be typewritten, printed, photocopied, or otherwise similarly prepared by a duplication process that will produce clear, permanent and legible copies, upon unruled, opaque, unglazed white paper of standard quality not less than thirteen pound weight, 8–1/2 × 11 inches in size and each sheet shall have a margin at the top and bottom of 1 inch (except as otherwise provided in paragraph (c) of this rule). The left-hand and right-hand side margin shall not be less than 1 inch. Such papers shall be typewritten in heavily inked black ribbon or printed in black. The type shall be

As a third and separate affirmative defense, all claims against [Clarence] are barred in whole or in part to the extent that [FHB] did not file or commence its action within the Statute of Limitations under the [Hawai'i] Uniform Commercial Code [(UCC)]: 490:2–725....

Eleven days later, on September 17, 1996, Asato officially withdrew as counsel for Clarence.

Prior to the scheduled pre-trial conference on November 4, 1996, Clarence filed three separate motions to dismiss, dated October 3, October 29, and November 4, 1996, respectively. These motions were substantially similar in substance and argued that: (1) the district court lacked subject matter jurisdiction over Clarence's complaint because the applicable statute of limitations had run; (2) FHB violated the notice provision of the contract by failing to inform Clarence of the day, time, and place that the car would be auctioned; and (3) FHB violated its obligation to enforce the terms of the contract in good faith.

Clarence's October 3, 1996 motion to dismiss was typed and signed by Clarence and included as attachments a brief in support of the motion, two exhibits, and two certificates of mailing that reflected that the motion and brief had been mailed to FHB's attorney. The district court's docket indicates that the motion was denied by a district court judge on the same day that it was filed, for the following reasons:

Filing Party Information missing; noncompliance with Rule 3, Rules of District Court[2]; No Notice of Motion attached;

standard 12 point pica or equivalent. Copies, but not originals, may be two-sided. The lines on each page shall be double-spaced or one and one-half spaced; provided, however, descriptions of real property and quotations may be single spaced. All pages shall be numbered consecutively at the bottom and shall be firmly bound together at the top. Exhibits may be fastened to pages of the specified size and, when prepared by a machine-copying process, shall be equal to typewritten material in legibility and permanency of image. Signatures and all other handwritten entries on papers shall be in ink. The name of the person signing the pleading or paper shall be typed or printed in block letters directly below the signature.

No category listed—Rule 3.RDC; Necessary to list hearing date/time under title of document and status of case.

(Footnote added.)

Clarence's October 29, 1996 motion to dismiss was typed on the standard district court form for motions to dismiss (HDCMOT.FRM). In the blank spaces of the form, Clarence filled in the information requested and in the "Declaration" section of the form, which required that Clarence explain in detail why he felt that the motion should be granted, Clarence stated:

> The [c]ourt had no subject matter jurisdiction over this action for the reason that the statute of limitations has run as to any relief or cause prayed for in this action.

**(b) No Flyleaf Shall be Attached to Any Paper.** All papers shall be filed without backs and shall be neat, clean, legible and free of interlineations.

**(c) Form of First Page.** The first page of all papers, except for court forms and except as provided in (d) of this rule, shall be in the following form:

(1) The space at the top left of the center of the page shall contain the name, code number, office address, telephone, and facsimile number of the attorney for the party in whose behalf the paper is filed, or of the party if appearing in person;

(2) The space at the top right of the center of the page shall be left blank for the use of the clerk of the court;

(3) There shall be centered the name of the court, which shall be not less than 3 inches from the top of the page;

(4) The space to the left of the center of the page shall contain the title of the cause (which title shall include the names of all of the parties in the initial pleading, but thereafter may be appropriately abbreviated);

(5) In the space to the right of the title of the cause, there shall be listed the class and case number followed by the category best describing the claims asserted in the case and followed in all cases by the character of the paper.

The category best describing the claims asserted in a civil claims case shall be selected from the following:

Assumpsit
Personal Injury
Property Damage
Replevin
Special Proceeding
Summary Possession (Residential Lease)
Summary Possession (Commercial Lease)
Other Civil Action

(6) Certification or acknowledgment of service may be entered at the bottom margin.

(SEE ATTACHED MOTION TO DISMISS AND BRIEF IN SUPPORT OF THE MOTION[.])

The district court's docket indicates that Clarence's October 29, 1996 motion to dismiss was denied on the same date that it was filed, for three reasons:

1. No Motion to Shorten Time for Hearing filed.

2. No copies of Motion submitted.

3. No attorney code number placed next to Counsel's name.

On November 1, 1996, FHB filed a memorandum in opposition to Clarence's motions, contending that (1) pursuant to Hawai'i Revised Statutes (HRS) § 657–18,[3] the statute

**(d) Two Pleadings Filed Together.** Where two or more pleadings or other papers are filed together, only the first page of the first paper shall follow all of the requirements of (c) of this rule, and in addition thereto, there shall be listed, after the case number and before the character of the paper, the character of all of the papers that are being filed together. The top of the first page of each paper other than the first shall start with the name of the court and include the class and case number, the title of the cause and the character of the paper, in appropriate spaces as set forth in (c) of this rule.

**(e) Sanctions.** The court may impose sanctions for the non-compliance with these rules.

**(f) Form Furnished by the Court.** The court shall furnish forms approved by the supreme court, and those forms shall be used in all appropriate instances, unless otherwise permitted by the court.

Approved forms may be reproduced through photocopiers, computers or other means. A reproduced form shall be similar in design and content to the approved form. Any person filing a form that is not identical in content to an approved form shall advise the court of the differences by attaching a short explanatory addendum to the document. The court may impose sanctions upon the filing person for failure to comply with this rule. The approved forms or any reproduction thereof permitted by this rule shall not be subject to the format requirements of this rule.

3. Hawai'i Revised Statutes (HRS) § 657–18 (1993) provides:

> **Extension by absence from State.** If at any time when any cause of action specified in this part or section 663–3 accrues against any person, the person is out of the State, the action may be commenced within the terms respectively limited, after the return of the person into the State, and *if, after the cause of action has accrued, the person departs from and resides*

of limitations was tolled for the period of time that Clarence had remained out of Hawai'i; and (2) FHB complied with the terms of the contract.

Clarence's November 4, 1996 motion to dismiss, which was filed at 10:02 a.m., was also prepared on the standard district court form. The record indicates that in the "Notice of Motion" section of the form, Clarence had typed in that the motion would be heard by Judge Gerald H. Kibe "on Monday, the 4th day of November, 1996 at 11 A.M., or as soon thereafter as parties may be heard." However, a court clerk had crossed out the "4th[,]" written "25th" in its place, and initialed the change. The same court clerk also crossed out the "11" and initialed the change. However, no substitute time for the motion was penned in by the clerk.

At the scheduled pre-trial conference held on November 4, 1996 at 11:00 a.m., both Clarence and counsel for FHB were present, but the district court continued the pre-trial conference until February 3, 1997 at 9:00 a.m. Subsequently, by letters dated January 7 and 16, 1997, respectively, a district court clerk informed the parties that the pre-trial conference was being rescheduled, first to February 10, 1997, at 9:00 a.m., and subsequently, to February 10, 1997, at 1:30 p.m.

On November 25, 1996, neither Clarence nor FHB's attorney was present at the hearing on Clarence's November 4, 1996 motion to dismiss, and consequently, the court denied the motion.

On February 3, 1997, Clarence mailed to the district court's civil division, by express mail, a fourth motion to dismiss, again printed on the standard district court form. The record on appeal indicates that the motion was delivered by the United States Postal Service to the district court on February 7, 1996, and a district court employee signed for its delivery at 10:45 a.m. However, the file-stamp on the motion indicates that the motion was not actually filed by the district court until February 10, 1997 at 12:52 p.m. In

*out of the State, the time of the person's absence shall not be deemed or taken as any part of the time limited for the commencement of the action.*

the "Declaration" section of the form, Clarence had typed in the following:

> Comes now Defendant, Clarence A. Powers Jr., requesting motion to dismiss (entered November 4, 1996) be reexamined for reconsideration. [Clarence] was not properly notified by the court that motion would be heard. Proper copies were left with the court clerk, as well as copies were made by the court clerk before [Clarence] left court. The only correspondence with the court was the move of the court date; and then time. Request is that motion will be heard Feb[.] 10, 1997 at 1330.

Clarence's fourth motion to dismiss was again immediately denied without a hearing, for the reason that "Date of service of Motion not included in Certificate of Service."

At 1:40 p.m. on February 10, 1997, Clarence's fifth motion to dismiss, again prepared on the standard district court form, was filed. In the "Declaration" section of the form, Clarence typed in the following explanation for why he believed his motion should be granted:

> THE COURT HAS NO SUBJECT MATTER JURISDICTION OVER THIS ACTION FOR THE REASON OF DISTRICT COURT RULES OF CIVIL PROCEDURES RULE 11b (1)(2)(4)(5)(6), h(1)(3); PLEADINGS AND PROCEDURES 634–35 a(1)-(4) pg 196, AND RULE 56 (SEE ATTACHED)

This motion was also denied, sua sponte, for the reason that the "Date of service of Motion not included in Certificate of Service."

The February 10, 1997 pre-trial conference was scheduled to begin at 1:30 p.m. Because Clarence was not present when the case was originally called, the district court ordered that default be entered against him. When Clarence appeared at 1:50 p.m., the default was set aside and the case continued until moved on.

On March 6, 1997, Clarence filed his sixth motion to dismiss, again prepared on the standard district court form, wherein he once again claimed that the district court had no

(Emphasis added).

subject matter jurisdiction to entertain FHB's complaint. In the "Notice of Motion" section of the form, Clarence typed in that the motion would be heard on "FRIDAY, the 25th day of APRIL, 1997 at 1 P.M." The foregoing date was crossed out, however, and the new date and time for the hearing penned in, apparently by a court clerk, as "Monday, the 8th day of APRIL, 1997 at 8:30 A.M."

On April 2, 1997, FHB answered Clarence's sixth motion to dismiss by resubmitting the same memorandum in opposition that it had filed on November 1, 1996. On April 28, 1997, after hearing arguments on Clarence's sixth motion to dismiss, the district court orally denied said motion to dismiss, on grounds that it had "no basis to grant [said motion]" and entered a written order to that effect on May 30, 1997. The district court then scheduled a pre-trial conference for July 7, 1997 at 9:30 a.m.

On July 7, 1997, Clarence failed to appear at the pre-trial conference and the court ordered that default be entered against Clarence. Thereafter, on July 17, 1997, default was entered by a district court clerk, pursuant to District Court Rules of Civil Procedure (DCRCP) Rule 55(a). However, there is no indication in the record that Clarence was ever notified of the entry of default.

On April 6, 1998, FHB filed a Non–Hearing Motion for Default Judgment (Motion for Default Judgment) against Clarence on grounds that Clarence "failed to appear or otherwise defend for" a pre-trial conference. FHB's motion was prepared on a standard district court form (DF4MTNHR.3X, amended 4/18/97) that is a bit confusing since it appears to contemplate that the form be partly filled out by the moving party, then forwarded to the responding party for a response, and then forwarded to the district court for decision and order.

The first page of the form included a two-paragraph "Non–Hearing Motion for Default Judgment," which was signed and dated March 11, 1998 by FHB's attorney, as well as a "Declaration" in support of the motion containing six numbered statements, which was signed and dated March 11, 1998 by an FHB Assistant Vice President who verified the truth and correctness of the statements. Across the bottom of the first page, in bold letters, was the following: "SEE AND USE REVERSE SIDE TO RESPOND TO THIS MOTION[.]"

The top half of page two of the form included a "Notice of Motion" addressed to Clarence in Indianapolis, Indiana, informing Clarence as follows:

**NOTICE IS GIVEN** that the undersigned has filed this Motion. Any response to this Motion must be in writing on the space provided below (attach separate page if more space is needed) and filed with the [c]ourt no later than 10 days from the date shown on the Certificate of Service below when the Motion is hand-delivered or 12 days when the Motion is mailed. Your written response can be delivered or mailed to the [c]ourt at **1111 Alakea Street, Civil Division, Third Floor, Honolulu, Hawai'i 96813. IF NO RESPONSE IS RECEIVED BY THE COURT BY THE DATES SPECIFIED IN THIS NOTICE, THIS MOTION MAY BE GRANTED.**

Immediately below the Notice of Motion was a "Certificate of Service" by which FHB's attorney certified that a copy of the motion had been mailed to Clarence in Indianapolis, Indiana on March 11, 1998.

On part of the bottom half of the second page of the form was the following:

**RESPONSE TO MOTION/CERTIFICATE OF SERVICE**

☐ I DO NOT OBJECT to this Motion.

☐ I DISAGREE with this Motion for the following reasons:

This was followed by space to provide reasons for disagreeing, then followed with:

I have read this Response, know the contents and verify that the statements are true to my personal knowledge and belief. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF HAWAI'I THAT THE ABOVE IS TRUE AND CORRECT.**

Immediately thereafter were two blocks—one for the date, and the other for the "Signature of Respondent Party(ies)/Responding

Party(ies)' Attorney" and his or her name, printed or typed.

At the top of page three of the form was a "Certificate of Service," intended to be signed and dated by the Responding Party or Responding Party's attorney to certify that a copy of the response to the motion was served on the opposing party. Neither the Response to Motion nor the Respondent's Certificate of Service was filled in by Clarence on FHB's Motion for Default Judgment that was filed on April 6, 1998.

At the bottom of page three of the form was a section entitled "Court Order." Two block options were provided for the district court judge entering the order, one for the granting of the motion, and the other for the denial of the motion. In this case, a district court judge, on April 6, 1998, the same day the motion was filed, checked off that he was granting the motion and granting default judgment in favor of FHB and against Clarence (April 6, 1998 Default Judgment) as follows:

| | |
|---|---|
| Principal Claimed | 3,427.96 |
| Interest | 3,763.40 |
| Attorney's Fees | 1,797.84 |
| Costs of Court | 25.00 |
| Sheriff's Fees | –0– |
| Sheriff's Mileage | –0– |
| Other Costs | 7.75 |
| Total Default Judgment Amount | 9,021.95 |

On April 17, 1998, Clarence filed a motion to set aside the April 6, 1998 Default Judgment. In a memorandum in support of his motion, Clarence noted that when he received FHB's Non–Hearing Motion for Default Judgment, he disagreed with the motion, using the same court form used by FHB, "where it says, 'SEE AND USE REVERSE SIDE TO RESPOND TO THIS MOTION'." However, according to Clarence:

On the 23rd day of March, 1998, the [c]ourt refused [Clarence's] document, denying it for what it said was "NOT AN APPROVED COURT FORM". The denial

was received from the [c]ourt March 27, 1998. [FHB] then filed with the [c]ourt, a "NOTICE OF ENTRY OF JUDGMENT OR ORDER," on the 6th day of April, 1998.

At a May 4, 1998 hearing on Clarence's motion, the district court, noting that default had been entered against Clarence in early or mid–1997,[4] focused its questioning of Clarence on why he had taken so long to file his motion to set aside the default:

THE COURT: ... Why has it taken so long for this motion to be filed because there are three things that you have to show for me to grant the motion like this. First of all, that it was excusable neglect.

[CLARENCE]: I did ...

THE COURT: Wait a second. Listen up.

[CLARENCE]: I'm sorry.

THE COURT: First of all, that there was excusable neglect. Secondly, that there's a meritorious defense. Thirdly, that there's no prejudice to the Plaintiff or the other side. Now, my first question is why has it taken so long to file this motion if the default was entered back in April or July of last year?

[CLARENCE'S UNCLE]: Your Honor, if I may respond. He's found ...

THE COURT: He's the one that defaulted. I want him to tell me.

[CLARENCE]: It was several—it was several ...

THE COURT: On your feet, sir.

....

Do you understand what I'm saying?

....

[CLARENCE]: Yes, sir.

THE COURT: Why was it—why has it taken so long to file this Motion to Set Aside the Default?

[CLARENCE]: Okay. Your Honor, I ...

THE COURT: If it was in April, it's been over a year, or about a year.

---

4. As noted earlier, it does not appear from the record that Defendant–Appellant Clarence A. Powers, Jr. (Clarence) was ever notified that default had been entered against him at the July 10, 1997 pre-trial conference.

[CLARENCE]: I filed several motions, Your Honor.

THE COURT: No motion to set aside the default though. I've looked through the file.

[CLARENCE'S UNCLE]: They did not give him ...

THE COURT: And, I found—I've seen your motion to dismiss.

[CLARENCE'S UNCLE]: Yes, sir. They did not give him a default judgment until this year.

THE COURT: That doesn't matter.

[CLARENCE'S UNCLE]: Okay.

THE COURT: You knew it was defaulted back when you didn't appear. Now, why has it taken so long?

[CLARENCE]: Your Honor, I did appear.

[CLARENCE'S UNCLE]: You did appear.

[CLARENCE]: I did appear. I was here.

THE COURT: Okay. You missed a pretrial conference or something, right?

[CLARENCE]: No, sir. I was here.

THE COURT: Give me the file.

[CLARENCE]: I—I came out here. I was here.

THE COURT: July 7th (seventh).

[CLARENCE]: Yes, Your Honor.

THE COURT: Well, what is the reason? Nonappearance.

[CLARENCE]: They—I was here. I ...

THE COURT: That's correct. Pretrial—pretrial conference at 9:30 that was missed.

[CLARENCE]: It was not missed, Your Honor. I was here. I was late.

THE COURT: That's what our record says.

[CLARENCE'S UNCLE]: Well, he flew out from the mainland, and presented himself to the [c]ourt. And, it seems that he never was given an opportunity, really, to defend this lawsuit.

[CLARENCE]: I was here, Your Honor. I did come out here. I did show myself here. I was here. Now, I was—I was late coming upstairs because my ...

THE COURT: Okay. What happened at that hearing ...

[CLARENCE]: At that hearing?

THE COURT: ... if you were here?

[CLARENCE]: They set the—they set a time to hear the motion, I believe, July the 10th, or somewhere at a later time. They—because I had a—I just had an accident. I got injured, and I did not—I was not able to come back right away. I—I had an accident in ...

THE COURT: Okay. So, ...

[CLARENCE]: ... July.

THE COURT: ... let's say—let's say that that happened, and why has it taken until now for this motion to be set aside the default to be filed? Now, we can say excusable neglect sometimes runs up to six months. But, we're well over that now.

[CLARENCE]: I've—I've been nothing but filing motion after motion from the time they filed such suit. And, I've been getting nothing from the [c]ourt but denial, denial, denial. Wrong forms.

THE COURT: And, you're going about to get another one, [Clarence].

. . . .

The motion is—to set aside the default is denied.

[CLARENCE]: Your Honor, can I—can I file another motion in order to have this heard, this question/answer that you are answer—asking of me to answer this 'cause I can prove to you I was here.

THE COURT: You know, you keep filing these motions after the case has already been completed as far as I'm concerned.

. . . .

So, what I'm gonna' [sic] do is enter an order saying that we will entertain no further motions on this case.

The district court subsequently filed two identical written orders, dated August 25 and August 26, 1998, denying Clarence's Motion to Set Aside Judgment. Clarence now appeals.

## DISCUSSION

### A. *The Requirements for Entry of a Default*

The district court entered default against Clarence pursuant to DCRCP Rule 55(a), which provides, in relevant part:

(a) **Entry.** When a party against whom a judgment for affirmative relief is sought *has failed to plead or otherwise defend as provided by these rules,* and the fact is made to appear by affidavit or otherwise, the clerk shall enter that party's default.

. . . .

(d) **Claims.** The provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim. . . .

(Emphasis added.) In order to determine whether the district court properly entered default against Clarence, therefore, it is necessary to determine whether Clarence "failed to plead or otherwise defend as provided by these rules[.]" We turn initially, then, to a review of those DCRCP rules that govern pleadings and defenses.

The rule which sets forth the types of pleadings that are allowed in the district court is DCRCP Rule 7, which provides, in relevant part, as follows:

### PLEADINGS ALLOWED; FORM OF MOTIONS.

(a) **Pleadings.** There shall be a complaint and an answer; there may be a counter-claim or a cross-claim denominated as such; there may be a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and there shall be a third-party answer, if a third-party complaint is served. *No other pleadings shall be allowed, except by leave or order of court or as provided by statute or rule of court.*

(Emphasis added.) Thus, the type or responsive pleadings that are allowed under the rules are an answer to a complaint, counter-claim, cross-claim, or third-party complaint.

The relevant rules that govern the types of defenses that may be made and the manner of asserting those defenses are DCRCP Rules 8, 12, and 12.1.[5] Rule 8 provides, in pertinent part:

### GENERAL RULES OF PLEADING.

. . . .

(b) **Defenses; Form of Denials.** Except in summary possession proceedings or where a defendant has been served by the publication of summons in a newspaper of general circulation, (1) a defendant may defend by filing an answer on the return day or within the time ordered by the court; (2) an appearance without written answer shall be deemed to constitute a general denial of the truth of the facts stated in the complaint; (3) whether or not the defendant has filed an answer, the court may order a written answer, governed by the following rules: . . . .

In summary possession proceedings or where a defendant has been served by the publication of summons in a newspaper of general circulation, a defendant may defend by filing an answer on the return day specified by Rule 12(a) or by making an appearance without written answer on the return day specified by Rule 12(a) which shall be deemed to constitute a general denial of the truth of the facts stated in the complaint.

DCRCP Rule 12 provides, in relevant part:

### DEFENSES AND OBJECTIONS—WHEN AND HOW PRESENTED—BY PLEADING OR MOTION—MOTION FOR JUDGMENT ON THE PLEADINGS.

(a) **Answers—When Presented; Return Day.** All defendants shall appear or answer at the time appointed in the summons, on the second Monday following the date of service, except where the district

---

**5.** District Court Rules of Civil Procedure Rule 12.1 relates to defenses of title in district courts

and, accordingly, is not relevant to this case.

judge sets some other secular day; and should such Monday be a legal holiday then upon the next secular day.

In summary possession proceedings under chapter 666 of the Hawai'i Revised Statutes, all defendants shall appear on or answer by a return day which shall be the next court session no less than five days following the date of service if made in the circuit in which the action was commenced, and shall be the next court session not less than seven days following the date of service if made in another circuit; . . . .

**(b) How Presented.** Every defense, in law or fact, to the complaint or third-party complaint, may be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses may be made before trial. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, that adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

. . . .

**(e) Motion for More Definite Statement.** If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, that party may move for a more definite statement before interposing its responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just. The order of the court granting or denying the motion shall fix the time within which the responsive pleading shall be filed and served.

**(f) Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the moving party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Pursuant to DCRCP Rules 8 and 12, therefore, a defendant may defend against a complaint by: filing a written answer; appearing in district court on the return date and entering a general denial, unless the district court specifically orders that a written answer be filed; or filing the types of motions that may be made under Rule 12.

In this case, Clarence not only filed an answer to FHB's complaint but also filed six separate motions to dismiss the complaint. He also returned to Hawai'i from his home on the mainland several times to attend scheduled pre-trial conferences. He, therefore, clearly did not "fail to plead or otherwise defend" against FHB's lawsuit within the meaning of the rules so as to allow default to be entered against him.

We note that DCRCP Rule 55(a) is almost identical in language to the Federal Rules of Civil Procedure (FRCP) Rule 55(a). Professor Moore, in his well-known treatise on Federal Practice, has noted that "[t]he courts are split as to whether the words 'otherwise defend' may be used to expand the power of the courts to use Rule 55(a) as a

basis for defaulting a party for subsequent conduct in an action." 10 *Moore's Federal Practice* § 55.10[2][b] at 55–12.1 (3d ed.1998). Professor Moore goes on to comment, however, that:

> Rule 55(a) obviously refers to and is designed to operate at the initial stages of a lawsuit. A complaint (or third party complaint, counterclaim, or cross-claim) is served and the party who is served must either plead, "otherwise defend," or suffer a default. The rule is written in the disjunctive. By its express language it authorizes a default only if a party fails to plead *or* otherwise defend. Therefore, once a party has pleaded, or has otherwise defended, may that party's subsequent conduct, such a failure to appear at trial or a failure to comply with discovery requests, be considered a subsequent failure to "otherwise defend" so as to justify the entry of a default under Rule 55(a)? The proper answer is no. There is no need for this type of expansive interpretation of Rule 55(a). If there is a subsequent failure to prosecute, Rule 41(b) [6] provides an express mechanism to deal with this, and express authority for dismissing the claims of an errant plaintiff. Misbehavior of parties in discovery is also explicitly addressed by its own rule, Rule 37(b)(2)(C),[7] which expressly authorizes dismissals or the striking of pleadings and entry of default judgments.
>
> Some courts have properly recognized that Rule 55(a)'s "otherwise defend" language may not be extended to justify a dismissal once there has been an initial responsive pleading or an initial action that constitutes a defense. However, other courts, without much analysis, have simply concluded that Rule 55(a) may be used to justify a default as a sanction whenever a party has engaged in conduct that might be loosely characterized as a failure to "otherwise defend." The result in these courts is unfortunate, particularly when a Rule 55 default for discovery misconduct is substituted for the default sanction in Rule 37. . . .

*Id.* at 55–12.1—55–12.2 (emphasis in original; footnotes omitted; footnotes added).

We agree with Professor Moore's construction of FRCP Rule 55(a) and conclude, based on the literal wording of DCRCP Rule 55(a), that Clarence's filing of an answer, as well as numerous motions to dismiss, constituted a pleading or defense, thus precluding the district court from entering default and default judgment against Clarence pursuant to DCRCP Rule 55 for allegedly failing to appear at a pre-trial conference. Accordingly, we conclude that the district court was wrong when it refused to set aside the default and default judgment against Clarence. We turn, then, to an examination of the merits of Clarence's argument that the statute of limitations bars this lawsuit.

### B. *The Statute of Limitations Defense*

#### 1.

 FHB does not dispute that the statute of limitations that applies to this case is

---

**6.** Federal Rules of Civil Procedure (FRCP) Rule 41(b) provides:

> **(b) Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

**7.** FRCP Rule 37(b)(2)(C) states:

> **(b) Failure to Comply with Order.**
> . . . .
>
> **(2) Sanctions by Court in Which Action is Pending.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> . . . .
>
> **(C)** An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

HRS § 490:2–725 (1993),[8] which is part of the Hawaiʻi UCC and provides, in relevant part, as follows:

**Statute of limitations in contracts for sale.** (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach....

....

(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before January 1, 1967.

FHB argues, however, that the foregoing statute of limitations was tolled, pursuant to HRS § 657–18 (1993), for the period that Clarence was out of this state. We disagree.

### 2.

HRS § 657–18 (1993) provides, in pertinent part:

**Extension by absence from State.** *If at any time when any cause of action specified in this part or section 663–3 accrues against any person,* the person is out of the State, the action may be commenced within the terms respectively limited, after the return of the person into the State, and if, after the cause of action has accrued, the person departs from and resides out of the State, the time of the person's absence shall not be deemed or taken as any part of the time limited for the commencement of the action.

(Emphasis added.) The tolling provisions of HRS § 657–18 are thus applicable only to those causes of action specified in "this part"—i.e., Part I of HRS chapter 657, entitled "Personal Actions,"—and HRS § 663–3 (1999). By express limitation, therefore, HRS § 657–18 does not apply to toll the statute of limitations set forth in HRS § 490:2–725.

### 3.

■ Even if HRS § 657–18 does apply to claims arising under the Hawaiʻi UCC, we conclude, in light of *Shin v. McLaughlin,* 89 Hawaiʻi 1, 967 P.2d 1059 (1998), that the tolling provisions of HRS § 657–18 do not apply to this particular case because Clarence was subject to the jurisdiction of the Hawaiʻi courts and amenable to service of process under Hawaiʻi's long-arm statutes, as set forth in HRS §§ 634–35 (1993) and 634–36 (1993).

In *Shin,* the Hawaiʻi Supreme Court addressed whether the two-year statute of limitations set forth in HRS § 294–36(b)(1) (1985) for bringing a suit arising out of a motor vehicle accident was tolled by the operation of HRS § 657–18. Without deciding whether HRS § 657–18 even applied to all claims arising out of motor vehicle accidents, the supreme court held that "HRS § 657–18 does not apply to toll the no-fault statute of limitations where a nonresident motorist defendant is subject to the jurisdiction of our courts and amenable to service of process under our long-arm statutes as set forth in HRS §§ 634–33 (1985) and 634–36 (1985)." *Id.* at 3, 967 P.2d at 1061 (footnote omitted). In so holding, the supreme court observed that

[w]hen read together, the statutes provide for service upon a resident or nonresident motorist by way of personal service, mail (with return receipt requested), or publication.... The statutes, thus, designate a

---

**8.** Since Plaintiff–Appellee First Hawaiian Bank's (FHB) action against Clarence was to recover a deficiency judgment arising out of a simple interest credit sale contract for an automobile, pursuant to which FHB retained title to Clarence's car and a Hawaiʻi Uniform Commercial Code (UCC) security interest in the car until the full contractual amount was paid, we agree that the statute of limitations set forth in HRS § 490:2–725 (1993) was applicable. As 68A Am.Jur.2d *Secured Transactions* § 700, at 565 (1993) notes:

An action to recover a deficiency judgment is not governed by Article 9 [relating to secured transactions] as it is merely an ordinary action seeking to enforce the underlying obligation. Thus the action of the creditor to recover a deficiency judgment from a credit buyer of goods is in substance an action to recover the balance of the purchase price and is therefore subject to the statute of limitations applicable to such actions—that is, the four year statute of limitations of UCC § 2–725.

....

means of effectuating service of process upon motorists who are impossible or difficult to locate. Nothing in the legislative history discusses the effect of the long-arm statutes on HRS § 657–18. However, because nonresident motorists are amenable to service of process pursuant to HRS §§ 634–33 and 634–36, they are not "out of the state" in the sense contemplated by the [sic] HRS § 657–18. This being the case, ... the statute of limitations is not tolled when a defendant is "out of the state," as long as he [or she] is still amenable to service of process in the state. This interpretation is also consistent with courts in other jurisdictions construing similar statutes.

*Id.* at 6, 967 P.2d at 1064. The supreme court noted that " 'the purpose of the statutes of limitations is to encourage promptness in the prosecution of actions and thus avoid the injustice which may result from the prosecution of stale claims. Statutes of limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses.' " *Id.* (quoting *Byrne v. Ogle,* 488 P.2d 716, 718 (Alaska 1971)). The supreme court held that if the tolling provisions were applicable to situations where a defendant was at all times amenable to service, lawsuits could "be postponed indefinitely[,]" a result clearly in conflict with the purpose of statutes of limitations. *Id.* at 7, 967 P.2d at 1065.

In this case, Clarence was similarly "amenable to service of process" under the long-arm statutes. HRS §§ 634–35 (1993) and 634–36 (1993) provide, in pertinent part:

### Acts submitting to jurisdiction.

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, the person's personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:

(1) *The transaction of any business within this State* [.]

. . . .

(b) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made as provided by section 634–36, if the person cannot be found in the State, with the same force and effect as though summons had been personally served within this State.

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over the defendant is based upon this section.

(Emphasis added.)

HRS § 634–36 (1993) provides:

**Manner of service under sections 634–33 to 35.** *When service of summons is provided for by section 634–33, 634–34, or 634–35, service shall be made by service upon the defendant personally by any person authorized to serve process in the place in which the defendant may be found* or appointed by the court for the purpose, *or sent by certified, registered, or express mail, postage prepaid, with return receipt requested, by the plaintiff or the plaintiff's attorney to the defendant.* The plaintiff or the plaintiff's attorney shall file the return of the serving officer or an affidavit showing that the copy of summons and complaint were served as aforesaid or sent by certified, registered, or express mail as aforesaid, and in the latter case the return receipt signed by the defendant shall be filed with the affidavit. The service shall be complete upon delivery of the required papers to the defendant outside the State, personally or by mail as provided.

If the defendant cannot be found to serve or mail the summons and the facts shall appear by affidavit or otherwise to the satisfaction of the court, it may order that service be made by publication of summons in at least one newspaper published in the State and having a general circulation in the circuit in which the action has been instituted, in such manner and for such time as the court may order, but not less than once each week in four successive weeks, the last publication to be not less than twenty-one days prior to the

return date stated therein unless a different time is prescribed by order of the court.

(Emphases added).

■ There is no question in this case that Clarence, by entering into a credit sale contract with FHB in Hawai'i, transacted "business within this State." *See Cowan v. First Ins. Co. of Hawaii,* 61 Haw. 644, 648, 608 P.2d 394, 398 (1980) (holding that "contracting in the State unquestionably constitutes transacting business under HRS § 634–35."). Consequently, Clarence falls within the reach of HRS § 634–35, and pursuant to HRS § 634–36 (1993), was "amenable to service of process." It follows, in accordance with the holding in *Shin,* 89 Hawai'i at 6, 967 P.2d at 1064, that Clarence's absence from the State did not toll the limitations period set forth in HRS § 490:2–725.

4.

The only remaining question is whether the statute of limitations ran against Clarence. We conclude that it did.

The Hawai'i Supreme Court has not yet had occasion to determine when the statute of limitations begins to run for bringing a lawsuit to recover a deficiency liability after the sale of collateral, and courts in other jurisdictions have taken different views of the issue. *See, e.g., Navy Fed. Credit Union v. Jones,* 187 Ariz. 493, 930 P.2d 1007, 1009 (Ct.App.1996) (the statute of limitations clock begins to run irreversibly when an optional acceleration clause is exercised by a demand of full payment before all installments become due); *Wheel Estate Corp. v. Webb,* 139 Ariz. 506, 679 P.2d 529, 531 (Ct.App.1983), *rehearing denied, review denied* (1984), (cause of action accrues when bank exercises option under acceleration clause of contract to repossess mobile home), *review denied* (1984); *Oaklawn Bank v. Alford,* 40 Ark. App. 200, 845 S.W.2d 22 (1993) (a note is accelerated by repossession and by demand for full payment for loan); *Cadle Co. v. Prodoti,* 45 Conn.Supp. 325, 716 A.2d 965, 966 (Super.Ct.1998) (cause of action accrues as of date car sold because terms of creditor's letter is clear that no total unpaid balance is due and owing until the sale of the automo-

bile has occurred); *Worrel v. Farmers Bank of the State of Delaware,* 430 A.2d 469, 472 (Del.1981) (claim accrued from the date following debtor's default on which bank, by word or conduct, evidenced intent to exercise option to declare remaining obligation immediately due); *F.D. Stella Products Co. v. Scott,* 875 S.W.2d 462, 464–65 (Tex.Ct.App. 1994) (the statute of limitations begins to run on a breach of contract only when the injured party elects to treat the contract as terminated).

We find it unnecessary to resolve the issue in this case because whether measured from the date of Clarence's breach of the contract (if any), FHB's January 16, 1991 demand for Clarence's return of the car, Clarence's January 19, 1991 surrender of the car to FHB, FHB's January 23, 1991 letter to Clarence informing him that FHB intended to sell the car if he did not pay the balance due under the contract, FHB's April 18, 1991 sale of the car, or the alleged April 23, 1991 letter from FHB to Clarence notifying him of the deficiency balance he owed, the four-year statute of limitations set forth in HRS § 490:2–725 had clearly lapsed prior to the July 16, 1996 commencement of this lawsuit.

CONCLUSION

For the foregoing reasons, we: (1) vacate the district court's August 25 and 26, 1998 Orders Denying [Clarence's] Motion to Set Aside Judgment in favor of FHB, entered on April 6, 1998; (2) vacate the Default Judgment in favor of FHB, entered by the district court on April 6, 1998; and (3) remand this case to the district court with instructions that it enter an order dismissing FHB's complaint against Clarence with prejudice.