498

Akemi Shimomura ANBE, a citizen of Hawaii, Plaintiff,

v.

Seiji KIKUCHI, a citizen of Japan, Defendant.

Civ. Nos. 92–00024 HMF, 92–00025 HMF.

United States District Court, D. Hawaii.

March 12, 1992.

Stanley K. Yamada, Jr., Honolulu, Hawaii, for plaintiff.

Taschner Law Office, Dana B. Taschner, Honolulu, Hawaii, for defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR AN ORDER QUASHING SERVICE FOR FAILURE TO PROPERLY SERVE UNDER THE HAGUE CONVENTION

FONG, District Judge.

### INTRODUCTION

On March 9, 1992, the court held a hearing on defendant Kikuchi's motion to dismiss or, in the alternative, to quash service for failure to properly serve under the Hague Convention filed on January 13, 1992. Plaintiff Anbe filed a memorandum in opposition on February 19, 1992, and defendant filed a reply memorandum in February 26, 1992.

### BACKGROUND

On November 14, 1991, plaintiff filed an annulment action in the Family Court of the First Circuit of the State of Hawaii entitled *Akemi Anbe v. Seiji Kikuchi*, Case No. FC–D 91–4328 ("annulment action"). On December 12, 1991, plaintiff filed a civil action in the First Circuit of the State of Hawaii entitled *Akemi Anbe v. Seiji Kikuchi*, Civil No. 91–4136–12 ("civil action"). Both state court actions arose from the same nucleus of facts. In the annulment action, plaintiff attempted to serve the complaint via registered mail; however, in the civil action, it does not appear that plaintiff attempted to effect service of process.

On January 13, 1992, defendant removed both actions from state court to federal court on the basis of diversity of citizenship. Civil No. 92–00024 HMF (annulment action); Civil No. 92–00025 HMF (civil action). Defendant now moves the court to dismiss or, in the alternative, to quash service for failure to serve properly under the Hague Convention. Plaintiff does not con-

test the defective service, thereby admitting that the court may quash the service. Instead, plaintiff argues that the harsh remedy of dismissal is not warranted.

## DISCUSSION

■ Neither party disputes the fact either that (1) defendant Kikuchi had to be served with the original complaints in Japan or (2) the Hague Convention governs service of process in foreign jurisdictions. The Hague Convention is a multinational treaty, formed in 1965 for the purpose of creating an "appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." Hague Convention preamble, 20 U.S.T. 361, 362, T.I.A.S. No. 6638, *reprinted in* 28 U.S.C.A. Fed.R.Civ.P. 4, note at 130 (West Supp.1989). By virtue of the Supremacy Clause of Article VI of the U.S. Constitution, the Hague Convention preempts methods of service prescribed by state law that are inconsistent with the convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).[1]

The Hague Convention sets out specific procedures to be followed in accomplishing service of process. Articles 2 through 6 provide for service through a central authority in each signatory country. These procedures may be supplemented by other procedures contained in Article 10 provided, however, that the destination country does *not* object. Article 10 provides, in relevant part:

Provided that State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Japan has formally objected to subparagraphs (b) and (c), but not to subparagraph (a). *See Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* (1983), Art. V. The court must determine whether subparagraph (a) permits service on a Japanese defendant by direct mail.[2]

Some courts have held that Article 10(a) allows direct service of a foreign defendant by mail, as plaintiff Anbe has done in this case. *Ackermann v. Levine*, 788 F.2d 830 (2d Cir.1986); *Patty v. Toyota Motor Corp.*, 777 F.Supp. 956 (N.D.Ga.1991); *Meyers v. ASICS Corp.*, 711 F.Supp. 1001 (C.D.Cal.1989); *Smith v. Dainichi Kinzoku Kogyo Co.*, 680 F.Supp. 847, 850 (W.D.Tex.1988); *Newport Components Inc. v. NEC Home Electronics, Inc.*, 671 F.Supp. 1525, 1541 (C.D.Cal.1987); *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456 (E.D.N.Y.1986); *Weight v. Kawasaki Heavy Industries, Ltd.*, 597 F.Supp. 1082 (E.D.Va.1984); *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182 (D.D.C. 1984); *Tamari v. Bache & Co.*, 431 F.Supp. 1226 (N.D.Ill.1977); *Shoei Kako Co. v. Superior Court*, 33 Cal.App.3d 808, 109 Cal. Rptr. 402 (1973). These courts reason that since the purported purpose of the Hague Convention is to facilitate service abroad, the drafters of Article 10(a) must have contemplated that judicial documents sent by mail would include service of process.

---

**1.** Both the United States and Japan are signatories to the Hague Convention.

**2.** Defendant also contends that service was defective because the complaint that was served by mail was not accompanied by a Japanese translation, as required by Article 5 of the Hague Convention. The court does not address this issue because, as set forth below, the service in this case did not comply with other requirements of the Hague Convention.

*Ackermann,* 788 F.2d at 839.[3] A district court in Georgia also concluded that:

> Given the number of Courts which have upheld service of process by direct mail, this Court must assume that the Japanese Government is aware of the interpretation given the Hague Convention in this country. The fact that no efforts to amend the Convention can only indicate tacit agreement.

*Patty,* 777 F.Supp. at 958 n. 3 (rejecting Eighth Circuit's analysis in *Bankston v. Toyota Motor Corp.,* 889 F.2d 172 (8th Cir.1989)).

Other courts have held that the language in Article 10(a) does not refer to formal service of process, and, therefore, does not authorize direct service by mail. *Bankston v. Toyota Motor Corp.; Fleming v. Yamaha Corp., USA,* 774 F.Supp. 992 (W.D.Va. 1991); *Wilson v. Honda Motor Co.,* 776 F.Supp. 339 (E.D.Tenn.1991); *McClenon v. Nissan Motor Corp., USA,* 726 F.Supp. 822 (N.D.Fla.1989); *Hantover, Inc. v. Omet,* 688 F.Supp. 1377 (W.D.Mo.1988); *Prost v. Honda Motor Co.,* 122 F.R.D. 215 (E.D.Mo. 1987); *Pochop v. Toyota Motor Co.,* 111 F.R.D. 464 (S.D.Miss.1986); *Mommsen v. Toro Co.,* 108 F.R.D. 444 (S.D.Iowa 1985); *Suzuki Motor Co. v. Superior Court,* 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988). This Court finds the second line of authority to be persuasive for the reasons set forth below.

As the Supreme Court instructed in *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.:*

> [It is a] familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Where a legislative body includes particular language in one section but omits that same language from another section of the same act, it is generally presumed that the legislative body acted "intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

In keeping with this interpretive method, this court concludes that the term "send," as it is used in Article 10(a), is not the equivalent of the term "service," as it used in subsections (b) and (c) of Article 10. As one expert in Japanese law reasoned:

> The question of service by mail is not addressed by the Convention; it merely discusses the right to send subsequent judicial documents by mail. Any other process would be a rather illogical result, as the Convention sets up a rather cumbersome and involved procedure for service of process; and if this particular provision allowed one to circumvent the procedure by simply sending something through the mail, the vast bulk of the Convention would be useless.

E. Rougth, "Litigation Between Japanese and American Parties," *in* Current Legal Aspects of Doing Business in Japan and East Asia 190–191 (J. Haley ed. 1978), *quoted in Bankston v. Toyota Motor Corp.,* 123 F.R.D. 595, 599 (W.D.Ark.1989). As another district court concluded, "it strains plausibility that the Conventions' drafters would use the word 'send' in Article 10(a) to mean service of process, when they so carefully used the word 'service' in 10(b) and 10(c)." *McClenon,* 726 F.Supp. at 826. In light of the plain language and structure of the Hague Convention, any failure by Japan to "formally" object to Article 10(a) has only minor relevance.[4] In conclusion, this Court endorses the reasoning of the California Court of Appeal in *Suzuki Motor Co.:*

---

**3.** The *Ackermann* Court concluded that the use of the term "send" rather than the term "service" in Article 10(a) "must be attributed to careless drafting." *Ackermann,* 788 F.2d at 839.

**4.** The assertion that Japan's inaction "can only indicate tacit agreement" unfairly places the burden of reviewing (errant) federal lower court decisions on Japan. *Patty,* 777 F.Supp. at 958. Perhaps if the U.S. Supreme Court had concluded that Article 10(a) governed service of process, then such inaction could have been taken for acquiesence.

[Since] Japan itself does not recognize a form of service sufficiently equivalent to America's registered mail system, it is extremely unlikely that Japan's failure to object to Article 10, subdivision (a) was intended to authorize the use of registered mail as an effective mode of service of process, particularly in light of the fact that Japan specifically objected to the much more formal modes of service by *Japanese officials* which were available in Article 10, subdivision (b) and (c). Instead, it seems much more likely that Japan interpreted Article 10, subdivision (a) as allowing only the *transmission* of judicial documents, rather than the *service of process*. This interpretation is all the more reasonable given the fact that the [Hague] Convention persistently refers to "service" as opposed to "send," e.g., "forward documents, *for the purpose of service*," (Article 9, emphasis added); "transmission of judicial documents *for service*" (article 15 and 16, emphasis added), in contrast to "the freedom to *send* judicial documents, by postal channels, directly to persons abroad, ..." (Article 10, subd. (a), (Emphasis added).

200 Cal.App.3d at 1481, 249 Cal.Rptr. at 379.

Accordingly, plaintiff's failure to properly serve defendant in compliance with the Hague Convention requires the court to quash the service in both actions. Although defendant has requested the court to dismiss the actions, there is no legal or equitable justification for such a draconian remedy. Defendant's motion in the alternative for an order quashing service of process is GRANTED. The court instructs plaintiff to initiate the process for proper service under the Hague Convention within a reasonable period from the date of this Order.

IT IS SO ORDERED.