57 P.3d 413

Takako ETO, Plaintiff–Appellant,

v.

Ryu MURANAKA, Defendant–Appellee,

and

John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, and Doe Governmental Entities 1–10, Defendants.

No. 23296.

Supreme Court of Hawai'i.

Nov. 6, 2002.

As Amended Nov. 12, 2002.

Greg Nishioka (Nishioka & Fujioka), on the briefs, Honolulu, for plaintiff-appellant.

Richard Philpott & Carolyn K. Gugelyk (Goodsill Anderson Quinn & Stifel), on the briefs, Honolulu, for defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that an alleged tortfeasor not found in Hawai'i, who is a citizen and resi-

dent of Japan, was amenable to service under Hawai'i Revised Statutes (HRS) §§ 634–35 (1993) and 634–36 (1993), and the Convention on the Service Abroad of Judicial and Extra-judicial Documents in Civil or Commercial Matters [hereinafter Hague Convention]. In the instant case, Defendant–Appellee Ryu Muranaka (Defendant) was amenable to service under HRS §§ 634–35 and 634–36 and under the Hague Convention, when that treaty applied. However, (1) the first complaint of Plaintiff–Appellant Takako Eto (Plaintiff) was not timely served on Defendant, (2) HRS § 657–18 (1993) did not toll the statute of limitations, (3) the dismissal of the first complaint without prejudice did not toll the statute of limitations, and (4) the filing of a second complaint did not relate back to the date of the filing of the first complaint. Therefore, the circuit court of the first circuit (the court)[1] was correct in granting Defendant summary judgment on Plaintiff's second complaint on the ground that the statute of limitations had run.

## I.

Plaintiff claimed that on August 16, 1994, she was standing in line to cook her food at a barbeque grill when Defendant splashed grease on her clothes. The two engaged in a brief discussion, after which Defendant took a set of iron tongs and pressed it against Plaintiff's nose. He then orally threatened her and struck her with the tongs three times below her right eye.

The police arrived on the scene and arrested Defendant. Plaintiff asserted that she suffered blurred vision and burns as a consequence of Defendant's conduct. Both Plaintiff and Defendant are citizens and residents of Japan.

## II.

As a result of the aforesaid incident, Plaintiff filed a complaint for personal injuries, Civil No. 96–3372–08, on August 15, 1996 (First Complaint). Pursuant to Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 28 (1971), Plaintiff was required to serve the First Complaint on Defendant by February 15, 1997, six months after filing the action.[2]

Plaintiff did not serve Defendant by that date. Her prior counsel was unsuccessful in obtaining Defendant's address from the Honolulu Police Department (HPD). Plaintiff's present counsel also sought the assistance of Defendant's employer, Japan Airlines, which refused to assist in the matter. After criminal charges against Defendant were dismissed, HPD released his purported address to Plaintiff on May 16, 1997. That address in Japan, however, was no longer valid when obtained by Plaintiff. In the latter part of 1997, Plaintiff located Defendant's then-current address.

Pursuant to the Hague Convention, Plaintiff mailed the First Complaint and summons to the Japan Ministry of Foreign Affairs, which received it on December 12, 1997. Plaintiff's counsel was informed by a March 22, 1998 letter from the Consulate General of Japan that the Japan Ministry of Foreign Affairs served the First Complaint on Defendant on January 28, 1998, one year and five months after the filing of the First Complaint on August 15, 1996.

On February 10, 1998, Defendant moved to dismiss Plaintiff's First Complaint. A hearing on the motion to dismiss was apparently held on March 25, 1998 and the motion was granted by Judge Kevin S.C. Chang.

On March 27, 1998, prior to the filing of Judge Chang's written order of dismissal which was eventually filed on May 1, 1998, Plaintiff filed a "Motion to Set Aside Dismissal Without Prejudice, for Rehearing of Defendant's February 10, 1998 Motion to Dismiss, or for Reconsideration of Order Granting Defendant's Motion to Dismiss Complaint . . ., to Extend Time for Service of [First] Complaint and for Entry of Default."

---

1. The Honorable Gail C. Nakatani presided over this matter.

2. "A diligent effort to effect service shall be made in all actions, and if no service be made within 6 months after an action has been filed then after notice of not less than 5 days the same may be dismissed." RCCH Rule 28.

On April 8, 1998, while the March 27 motion to set aside dismissal was still pending, Plaintiff filed a second complaint, Civil No. 98–1677–04 (Second Complaint), "in an abundance of caution to preserve Plaintiff's right[s]." The Second Complaint is identical to the First Complaint.

On May 1, 1998, Judge Chang's order granting dismissal without prejudice was filed. In issuing its order, the court determined that "service was not completed in a timely manner":

> [T]he [First] Complaint in this case was filed in August of 1996 and there have been two extensions of time in which to effect service. Despite those extensions, service was not completed in a timely manner and Plaintiff did not file a motion to enlarge the time period to effect service before the hearing on Defendant's Motion to Dismiss. Plaintiff has failed to meet her burden of proof that there is jurisdiction over the Defendant in this case.

Subsequently, Plaintiff filed a motion for extension of time to serve the First Complaint nunc pro tunc, which was heard by Judge Virginia Lea Crandall. On June 15, 1998, Judge Chang filed an order denying Plaintiff's March 27, 1998 motion to set aside dismissal or for reconsideration without prejudice and allowed Plaintiff to apply to Judge Crandall for an order extending time for service:

> Plaintiff's motion is denied without prejudice. Service of process, if any, upon Defendant was untimely based upon the Honorable Virginia Lea Crandall's last order extending time for service. Plaintiff must apply to Judge Crandall if Plaintiff seeks a nunc pro tunc ruling extending time for service. The *granting of such a motion by Judge Crandall may constitute new grounds to re-apply to this Court for reconsideration of its previous dismissal order. The Court makes no ruling with regard to any issues regarding the tolling of the statute of limitations in this matter because there is no motion before it in that regard.*

(Emphasis added.)

On July 2, 1998, Plaintiff again filed a "Motion for Reconsideration of Order Granting [Defendant]'s Motion to Dismiss [the First] Complaint."

On September 21, 1998, Plaintiff filed an "Ex Parte Motion for First Extension [of] Time for Service of [the Second] Complaint." Judge Crandall granted the motion on September 21, 1998, and extended the period to serve the Second Complaint "from October 8, 1998 up to and including April 8, 1999."

On September 24, 1998, Judge Chang rendered an "Order Denying Plaintiff's [July 2, 1998] Motion for Reconsideration of Order Granting [Defendant]'s Motion to Dismiss Plaintiff's Complaint," stating that "Plaintiff has failed to establish [an] adequate factual and/or legal basis for the Court to reconsider the Order granting Defendant Muranaka's Motion to Dismiss [the First] Complaint." Plaintiff never appealed the decisions pertinent to the First Complaint.

On October 30, 1998, Plaintiff apparently mailed the Second Complaint and summons to Japan's Ministry of Foreign Affairs, which received them on November 2, 1998. Service was effected on November 21, 1998. Defendant answered the Second Complaint on January 25, 1999.

### III.

As previously indicated, on April 8, 1998, while the First Complaint was still pending, Plaintiff filed the Second Complaint, Civil No. 98–1677–04, more than three years after the alleged incident. Also, as mentioned, the Second Complaint is identical to the earlier First Complaint.

On April 26, 1999, Defendant filed a "Motion to Dismiss Plaintiff's [Second] Complaint or, in the Alternative, for Summary Judgment." At a hearing on May 25, 1999, Judge Gail C. Nakatani granted the motion. Judge Nakatani's order, filed on June 17, 1999, stated, "The Court finds that the Defendant has established that he is entitled to summary judgment as a matter of law because *the Second Complaint now before the Court was filed untimely,* having been filed at least a year past the applicable two-year statute of limitations." (Emphasis added.) Additionally, the court found "that no tolling of the

statute of limitations is applicable in this matter [because] ... the Second Complaint was filed as a different case, and hence there is no saving from the statute of limitations." Judge Nakatani ordered that "Defendant's motion, treated herein as a motion for summary judgment, [be] granted."

On February 29, 2000, and pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 58,[3] Judge Nakatani entered judgment against Plaintiff and in favor of Defendant. Plaintiff filed this appeal on February 29, 2000.

## IV.

On appeal, Plaintiff urges that the court erred in granting Defendant's motion for summary judgment on her Second Complaint. She argues (1) that HRS § 657–18 tolls the statute of limitations for effecting service on Defendant, a person "absent" from the State, (2) that whether or not Defendant was amenable to personal service within the definition of HRS § 657–18 is an issue of material fact not subject to resolution by summary judgment, and (3) that the statute of limitations did not run while the First Complaint was pending before the court. We observe that, whereas Plaintiff took no appeal from the orders affecting the First Complaint, those orders have become final.

## V.

### A.

■ The statute of limitations for a personal injury action is "two years after the cause of action accrued, and not after[.]" HRS § 657–7 (1993). Plaintiff urges that HRS § 657–18 tolled the limitations period for her personal injury action because Defendant was "absent" from the State of Hawai'i. HRS § 657–18 states in part that,

[i]f at any time when any cause of action specified in this part ... accrues against

any person, *the person is out of the State*, the action may be commenced within the terms respectively limited, after the return of the person into the State, and if, after the cause of action has accrued, the person departs from and resides out of the State, *the time of the person's absence* shall not be deemed or taken as any part of the time limited for the commencement of the action.

(Emphases added.) In view of the fact that "Defendant ... clearly was never a resident of the State of Hawai'i," she maintains "[he] therefore could not be available for personal service of the instant Complaint." In *Shin v. McLaughlin*, 89 Hawai'i 1, 967 P.2d 1059 (1998), this court acknowledged that "the plain language of HRS § 657–18 indicates that where a defendant departs from the state after a cause of action accrues, the time period during which he or she was 'out of the State' would not be considered as part of the limitation period." *Id.* at 4, 967 P.2d at 1062.

However, "look[ing] to other jurisdictions with analogous tolling statutes for guidance as to the 'reason and spirit of the law[,]' " *id.* (quoting HRS § 1–15(2) (1993)), this court discerned a majority view of "other courts [that] have interpreted the term 'absent' or 'out of the state' to mean 'a defendant who is beyond personal jurisdiction and process of the court and not simply a defendant who is physically absent from the state.' " *Id.* at 5, 967 P.2d at 1063 (quoting *Meyer v. Paschal*, 330 S.C. 175, 498 S.E.2d 635, 639 (1998)). Construing HRS § 657–18 "in conjunction with our long-arm statutes prescribed in HRS §§ 634–33 and 634–36," *id.* at 5–6, 967 P.2d at 1063–64, to ascertain "its true meaning as it relates to the court's personal jurisdiction over a nonresident defendant," *id.* at 5, 967 P.2d at 1063, it was concluded in *Shin* that,

because nonresident motorists are amenable to service of process pursuant to HRS §§ 634–33 and 634–36, they are not "out of

---

3. HRCP Rule 58 entitled "Entry of Judgment," states in relevant part:

When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him [or her] of the direction; but when the court directs entry of judgment for

other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk. The filing of the judgment in the office of the clerk constitutes the entry of judgment; and the judgment is not effective before such entry.

the state" in the sense contemplated by ... HRS § 657–18. This being the case, *we hold that the statute of limitations is not tolled when a defendant is "out of the state," as long as he [or she] is still amenable to service of process in the state.*

*Id.* at 6, 967 P.2d at 1064 (emphasis added). The holding rested on "the purpose of the statutes of limitations ... to encourage promptness in the prosecution of actions," and on "statutes establishing substituted service" which provided the "means [for] the equivalent of personal service ... on absent defendants." *Id.* Accordingly, it was held that "the tolling statute in HRS § 657–18 is inapplicable when a nonresident defendant is amenable to personal or substituted service of process as provided by HRS § 634–36 and the defendant can be brought within the personal jurisdiction of our courts." *Id.* In that regard, this court observed that "[t]he methods of service set forth in HRS § 634–36 were available to [the plaintiff] at all times during the two-year no-fault period of limitation[ ] [inasmuch as the plaintiff] could have served [the defendant] in person, by mail, or failing that, by publication. *See* HRS § 634–36." *Id.* Therefore, although Defendant may have resided outside of the State, the statute of limitations Plaintiff was required to comply with was not tolled if Defendant was "amenable to service of process." *Id.*

### B.

In this case, HRS § 634–35(a)(2) establishes the basis for jurisdiction over an alleged tortfeasor who is not present in the State and provides for service under HRS § 634–36 as equivalent to personal service within this State:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, the person's personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:

. . . .

(2) *The commission of a tortious act within this State;*

. . . .

(b) *Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made as provided by section 634–36, if the person cannot be found in the State,* with the same force and effect as though summons had been personally served within this State.

(Emphases added.) Because Plaintiff alleged that Defendant committed a tort in Hawai'i, HRS § 634–35(a)(2) was applicable and, in view of Defendant's absence from the State, service of process on him could be made pursuant to HRS § 634–36. HRS § 634–36 provides in relevant part for personal service, service by mail, and service by publication:

When service of summons is provided for by section[s] 634–33, 634–34, or 634–35, service shall be made by service upon the defendant personally *by any person authorized to serve process in the place in which the defendant may be found* or appointed by the court for the purpose, *or sent by certified, registered, or express mail,* postage prepaid, with return receipt requested, by the plaintiff or the plaintiff's attorney to the defendant. The plaintiff or the plaintiff's attorney shall file the return of the serving officer or an affidavit showing that the copy of summons and complaint were served as aforesaid or sent by certified, registered, or express mail as aforesaid, and in the latter case the return receipt signed by the defendant shall be filed with the affidavit. The service shall be complete upon delivery of the required papers to the defendant outside the State, personally or by mail as provided.

*If the defendant cannot be found to serve or mail the summons and the facts shall appear by affidavit or otherwise to the satisfaction of the court, it may order that service be made by publication of summons* in at least one newspaper published in the State and having a general circulation in the circuit in which the action has been instituted, in such manner and for such time as the court may order, but not less than once each week in four successive weeks, the last publication to be not less than twenty-one days prior to the

return date stated therein unless a different time is prescribed by order of the court.

(Emphases added.) In this regard, Plaintiff asserts that HRS § 634–36 "does not permit service of a summons upon a foreign national residing in a foreign country."

## VI.

### A.

■ Contrary to Plaintiff's argument, we believe that HRS § 634–36 is applicable unless service must be effectuated under the Hague Convention, as that treaty would preempt our state's service provisions. In *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988), the United States Supreme Court recounted that "[t]he Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conventions on Civil Procedure of 1905 and 1954." *Id.* at 698, 108 S.Ct. 2104. The Convention "was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Id.* The provisions of the Hague Convention may be summarized as follows:

> The Hague Service Convention states each signatory nation shall designate a central authority through which service of process may be effected. (Hague Service Convention, art. 2) That authority receives documents and serves them in accordance with either the internal law of the receiving state or a compatible method requested by the sender. The authority then provides the sender with a certificate of service. (Hague Service Convention, arts. 5, 6) A state may allow other methods of service within its boundaries. (Hague Service Convention, arts. 8–11, 19; *see also* [*Volkswagenwerk*], 486 U.S. [at] 699 [108 S.Ct. 2104] 100 L.Ed.2d 722, 730–31.) It may also object to the use of a particular method of transmission. (Hague Service Convention, art. 21.)

*Kott v. Superior Court,* 45 Cal.App.4th 1126, 53 Cal.Rptr.2d 215, 219 (1996). In *Volkswagenwerk,* the United States Supreme Court ruled that "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies." 486 U.S. at 698, 108 S.Ct. 2104.

In the case below, one Herwig Schlunk filed a wrongful death action against Volkswagen of America (VWoA), alleging that defects in a Volkswagen vehicle contributed to his parents' deaths. *See id.* at 696, 108 S.Ct. 2104. He subsequently amended his complaint to add Volkswagenwerk Aktiengesellschaft (VWAG) when VWoA, in its answer, denied designing or assembling the car. *See id.* at 696–97, 108 S.Ct. 2104. Herwig attempted to serve the amended complaint on VWAG, a German corporation, by serving VWoA as VWAG's agent. *See id.* at 697, 108 S.Ct. 2104.

VWAG subsequently filed a special and limited appearance seeking to quash the service, arguing that it could only be served in accordance with the Hague Convention. *See id.* at 697, 108 S.Ct. 2104. In pertinent part, the Hague Convention provides that "[t]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document *for service abroad.*" *Id.* at 699, 108 S.Ct. 2104 (quoting Hague Convention, art. 1) (emphasis added).

The Circuit Court of Cook County, Illinois denied VWAG's motion on the bases that (1) VWoA was registered to do business in Illinois, where the suit was filed, and, as a domestic subsidiary for a foreign corporation, it was the corporation's agent for receipt of process under the law in Illinois, and (2) VWoA and VWAG are so closely related that VWoA was VWAG's agent for purposes of service of process as a matter of law. *See id.* at 697, 108 S.Ct. 2104. The circuit court concluded that, because service had occurred within the United States, the Hague Convention did not apply. *See id.* The Appellate Court of Illinois affirmed on similar grounds, and the Supreme Court of Illinois denied VWAG leave to appeal. *See id.*

On certiorari to the United States Supreme Court, VWAG argued that, because it is a foreign corporation, the Hague Convention applied, and that service was accordingly not complete until VWoA transmitted the complaint to VWAG in Germany, which would constitute "service abroad" under the Hague Convention. *See id.* at 706–07, 108 S.Ct. 2104. Rejecting this position, the Court determined that the law of the forum state, in this case Illinois, prevailed in determining whether service abroad was required, explaining that, "[i]f *the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Convention applies." Id.* at 700, 108 S.Ct. 2104 (emphasis added). Construing the language and history of the Hague Convention, the Court concluded that service on an agent within the United States does not constitute "service abroad" and, thus, the Hague Convention was not implicated. *Id.* at 707, 108 S.Ct. 2104.

### B.

■ As indicated by the *Volkswagenwerk* Court, the Hague Convention provides the procedural method by which a litigant may serve process upon foreign parties when the foreign state is a party to the Convention. In order to determine whether the Convention is implicated, the Court ruled that the internal law of the forum "is presumed to determine whether there is occasion for service abroad." 486 U.S. at 704, 108 S.Ct. 2104. Hence, a litigant must first look to the internal law of the forum state and, if it calls for service abroad, then resort is had to the Hague Convention for the procedural mechanism by which service may be effectuated.

As previously noted, HRS § 634–36 sets forth three methods of service on defendants not found within our State: (1) personal service; (2) service by mail; or (3) failing the first two, service by publication. The Hague Convention provides for: (1) service through the Central Authority of the receiving nation, *see* Hague Convention, arts. 3–6; (2) service through diplomatic or consular channels, when the receiving State does not object, *see id.*, arts. 8, 9; 10(b); (3) service by interna-

tional registered mail, when the receiving State does not object, *see id.*, art. 10(b); and (4) other methods of service in accord with the internal laws of the receiving State, *see id.*, art. 19.

■ As the Second Circuit has noted, "[a]s a ratified treaty, the [Hague] Convention is of course 'the supreme law of the land.' " *Ackermann v. Levine,* 788 F.2d 830, 838 (1986). Thus, the United States Supreme Court in *Volkswagenwerk* stated that, "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies. . . . [C]ompliance with the Convention is mandatory in all cases to which it applies[.]" 486 U.S. at 699, 705, 108 S.Ct. 2104. It is evident, then, that Hawai'i law cannot override the Hague Convention, when the Convention applies.

### VII.

■ The first two methods of service under HRS § 634–36 call for service abroad if the defendant "may be found" there. As to the third method, we observe that there is no record indicating what steps were taken by Plaintiff, other than seeking information from Japan Airlines and the HPD, in locating Defendant's address in Japan. Accordingly, assuming, as Plaintiff asserts, that she could not locate Defendant, Plaintiff could have sought permission of a court to serve by publication. *See* HRS § 634–36. Defendant therefore was amenable to service by publication and, consequently, the statute of limitations was not tolled. *See Shin,* 89 Hawai'i at 6, 967 P.2d at 1064.

If a defendant can be located, HRS § 634–36 requires a plaintiff to serve the summons on the defendant where the defendant may be found. *Accord* Hague Convention, art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."). In that regard, the most consistent method for service under the Hague Convention is through the Central Authority of the receiving nation. Although States may object to other methods of service, article 2 mandates that each State designate a Central Authority through which service may be effectuated. *See* Hague Con-

496

vention, art. 2 ("Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6."). Under Article 5 of the Hague Convention, the Central Authority of the receiving state may serve either (1) by the method required by its internal laws, or (2) by a method requested by the applicant. *See id.*

> The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either—
>
> *a)* by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
>
> *b)* by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Hague Convention, art. 5.

In this case, after ascertaining Defendant's location through the use of an investigator,

Plaintiff resorted to the Hague Convention in serving her First Complaint and, later, her Second Complaint.[4] *See supra.* Plaintiff mailed the First Complaint and summons to the Japan Ministry of Foreign Affairs, Japan's designated Central Authority, which received it on December 12, 1997. Plaintiff's counsel was informed by a March 22, 1998 letter from the Consulate General of Japan that the Japan Ministry of Foreign Affairs served the First Complaint on Defendant on January 28, 1998. Judge Chang, however, dismissed the First Complaint for lack of timely service and his orders were not appealed and became final.[5]

After the Second Complaint was filed on April 8, 1998, it was served through the same procedure on November 21, 1998. Inasmuch as Plaintiff eventually served Defendant in this manner, Defendant was clearly amenable to service within the meaning of the Hague Convention, once Defendant's address became known to Plaintiff.[6] However, as indicated *infra*, the Second Complaint was filed after the statute of limitations had run and

**4.** Had Plaintiff served by publication, it would have been prudent, as she did, to serve her First Complaint through the Hague Convention when Defendant was located. *See infra* note 7.

We are not faced in this case with the question of whether service attempted under our service statute conflicted with the Convention requirements. Many jurisdictions proceed on the basis that the Hague Convention preempts their own state laws regarding methods of service, without analyzing whether the state statutes and the Hague Convention are in actual conflict. *See, e.g., Dahya v. Second Judicial District Court,* 17 Nev. 208, 19 P.3d 239, 242 n. 8 (2001). *But see Bowers v. Wurzburg,* 205 W.Va. 450, 519 S.E.2d 148, 159 (1999) (stating that "the United States Supreme Court has recognized that such preemption will occur in very limited circumstances, *i.e.,* only '[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad'" (quoting *Volkswagenwerk,* 486 U.S. at 700, 108 S.Ct. 2104)).

When the plaintiff adheres to the state service statute and attempts service other than through the Central Authority, the question of whether such service violates the terms of the Convention or the internal laws of the receiving State may arise. *See Quinn v. Keinicke,* 700 A.2d 147, 156 (Del.Super.1996) (under state motor vehicle long-arm statute requiring copies of service upon Secretary of State and service sent to nonresident defendant in Denmark via registered mail,

plaintiff did not violate Hague Convention); *Curcuruto v. Cheshire,* 864 F.Supp. 1410, 1412–13 (S.D.Ga.1994) (plaintiff did not violate Hague Convention when mailing complaint and summons to defendant in Canada as required under Georgia Non-resident Motorist Act).

**5.** Pursuant to the Hague Convention, Plaintiff mailed the first complaint and summons to the Japan Ministry of Foreign Affairs, which received it on December 12, 1997. We note that several courts have concluded that, once the Central Authority has the summons, the time limitations for service are tolled. *See Broad v. Mannesmann Anlagenbau A.G.,* 141 Wash.2d 670, 10 P.3d 371 (Wash.2000) (holding that, because the Hague Convention preempts inconsistent state law, and the Hague Convention contains no time limits within which service must be effected, the time limits are tolled, provided that the Central Authority of the foreign state receives the documents within the time limitation).

The dismissal of the First Complaint by Judge Chang was ostensibly precipitated by Plaintiff's failure to obtain adequate extensions of time to serve the complaint. Judge Chang's order, however, was not appealed by Plaintiff.

**6.** As previously stated, service by international registered mail is one of the other methods for service under the Hague Convention. *See supra* page 495, 57 P.3d at 420. Jurisdictions are

split, however, as to whether service by mail to a Japanese defendant is permissible under the Hague Convention. This is primarily based upon the fact that the internal law of Japan forbids such service, while Japan has not formally objected to the provision within the Hague Convention which ostensibly allows service by mail. *See generally* Alexandra Amiel, Note, *Recent Developments in the Interpretation of Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 24 Suffolk Transnat'l L.Rev. 387, 403 (2001) [hereinafter *Recent Developments*] (noting that while Japan has not objected to the use of postal channels pursuant to Article 10(a) as an infringement of its sovereign power, this does not necessarily mean that service by mail is considered valid service in Japan); *see also id.* at 403 n. 112 (citing *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Conference on Private International Law)* 43 (1992)).

Further, interpretation of Article 10(a) has also led to ambiguity. Article 10(a) of the Convention states: "Provided that State of destination does not object, the present Convention shall not interfere with—(a) the freedom to *send* judicial documents, by postal channels, directly to persons abroad...." (Emphasis added.) The conflict among the courts focuses on the construction of the word "send" in Article 10(a). *See Hayes v. Evergo Tel. Co.*, 100 N.C.App. 474, 397 S.E.2d 325, 327 (1990). Some courts have interpreted "send" to permit service by mail, while others interpret "send" to permit litigants of signatories to transmit documents other than a complaint and summons. *Compare Smith v. Dainichi Kinzoku Kogyo Co.*, 680 F.Supp. 847 (W.D.Tex.1988); *Newport Components, Inc. v. NEC Home Elecs. (U.S.A.), Inc.*, 671 F.Supp. 1525 (C.D.Cal.1987); *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456 (E.D.N.Y.1986); *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182 (D.D.C.1984); *Shoei Kako Co. v. Superior Court*, 33 Cal.App.3d 808, 109 Cal.Rptr. 402 (1973), *with Bankston v. Toyota Motor Corp.*, 123 F.R.D. 595 (W.D.Ark.), *aff'd*, 889 F.2d 172 (8th Cir.1989); *McClenon v. Nissan Motor Corp.*, 726 F.Supp. 822 (N.D.Fla.1989); *Mommsen v. Toro Co.*, 108 F.R.D. 444 (S.D.Iowa 1985); *Suzuki Motor Co. v. Superior Court*, 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988); *Ordmandy v. Lynn*, 122 Misc.2d 954, 472 N.Y.S.2d 274 (N.Y.Sup.Ct.1984).

A Hawai'i federal district court previously addressed this issue in *Anbe v. Kikuchi*, 141 F.R.D. 498 (D.Haw.1992). Acknowledging the split among other jurisdictions, the court rejected the liberal interpretation of the word "send" in favor of a stricter interpretation. It relied on the rule of construction that "[w]here a legislative body includes particular language in one section but omits that same language from another section of the same act, it is generally presumed that the legislative body acted 'intentionally and purposefully in the disparate inclusion or exclusion.' "

*Id.* at 499 (citing *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Because "send" was used in Article 10(a), whereas "service of process" was used in Articles 10(b) and (c), the court concluded that the drafters of the Hague Convention must have intended to give those terms different meanings. *See id.* at 500.

To support this interpretation, the court pointed to Japan's objection to more formal means of service under Article 10(b) (allowing service by "judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination"), and Article 10(c) (allowing service by "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination"), and the absence in Japan of a method of service similar to the registered mail system of the United States. *See Anbe*, 141 F.R.D. at 500–01. It concluded that Japan could not have rejected more formal means of service and then permit service by mail, a method of service that Japan's domestic law does not recognize. *See id.*

Some commentators disagree with this interpretation of Article 10(a). *See* Amiel, *Recent Developments*, *supra*, at 400–08 (noting that the trend among courts appears to indicate that Article 10(a) allows service by mail, when not prohibited by the internal laws of the receiving nation). Other problems may arise when using this method of service. As with service by publication, *see* discussion *infra*, the successful litigant using this method of service may encounter difficulties enforcing the judgment in Japan. *See* U.S. Dep't of State Opinion Regarding the Bankston Case and Service by Mail to Japan under the Hague Service Convention, 30 I.L.M. 260 (1991).

Although we acknowledge the split in jurisdictions as to whether service by international registered mail is permissible under the Hague Convention, this issue is not squarely presented in the present case, and, therefore, we do not resolve that question.

However, when service via submission to the Central Authority is available, because the defendant "could[ ] be found" under HRS § 634–35, and service under that section accordingly requires "service abroad," it may be prudent for litigants to utilize service by way of the Central Authority. As the Supreme Court cautioned,

nothing that we say today prevents compliance with the Convention even when the internal law of the forum does not so require. The [Hague] Convention provides simple and certain means by which to serve process on a foreign national. Those who eschew its procedures risk discovering that the forum's internal law required transmittal of documents for service abroad and that the Convention therefore provided the exclusive means of service. In addition, parties that comply with the Convention ultimately may find it easier to enforce

did not relate back to the filing of the First Complaint.

## VIII.

■ As mentioned, until late 1997, Defendant was amenable to service pursuant to HRS § 634–36 because, as Defendant's address was unknown, Defendant could have been served by publication. *See* Hague Convention, art. 1. Only publication does not require transmittal of documents abroad. Under *Volkswagenwerk*, service by publication does not implicate the Hague Convention, because it is not "service abroad" within the meaning of Article 1. *See Volkswagenwerk*, 486 U.S. at 700, 108 S.Ct. 2104. *See also Kott*, 53 Cal.Rptr.2d at 220 (holding that, under California law, which does not require the transmission of documents abroad and, consequently, does not implicate the Hague Service Convention, the only method of service on a foreign national is service of summons by publication where the party's address remains unknown during the publication period despite the exercise of reasonable diligence). Accordingly, service by publication is not pre-empted by the Hague Convention, and HRS § 634–36 governed.

■ Such service does not offend due process requirements. Our own constitutional due process clauses require that service of process be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As noted by the *Volkswagenwerk* Court,

> [u]nder [the Due Process] Clause, foreign nationals are assured of either personal service, which typically will require service abroad and trigger the Convention, or sub-

stituted service that provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

486 U.S. at 705, 108 S.Ct. 2104 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652).[7] In *Mullane*, the United States Supreme Court addressed the question of whether notice by publication met due process requirements under the Fourteenth Amendment. While setting out the general rule that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections[,]" 339 U.S. at 314, 70 S.Ct. 652 (citations omitted), the court observed that "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights[,]" *id.* at 317, 70 S.Ct. 652. "A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." *Id.* at 313–14, 70 S.Ct. 652. However, such notice which is "a mere gesture is not due process." *Id.* at 315, 70 S.Ct. 652.

■ Under Hawai'i law, while "such notice is disfavored[,]" due process is not violated when notice is made by publication, when, "in appropriate circumstances, notice by publication alone might be the only 'reasonable possible or practicable' warning." *Klinger v. Kepano*, 64 Haw. 4, 10, 635 P.2d 938, 942 (1981) (quoting *Mullane*, 339 U.S. at 317, 70 S.Ct. 652). Because Plaintiff would be required to show some diligence in locating Defendant before being allowed to serve by publication, *see* HRS § 634–36 ("If the

their judgments abroad. For these reasons, we anticipate that parties may resort to the Convention voluntarily, even in cases that fall outside the scope of its mandatory application. *Volkswagenwerk*, 486 U.S. at 705–06, 108 S.Ct. 2104.

7. Because notice by publication may be unreliable in actually informing interested foreign state

defendants about pending suits, the prerequisite of showing that reasonable diligence has been exercised in attempting to ascertain their whereabouts is particularly imperative. *See generally* Annotation, *Sufficiency of Affidavit as to Due Diligence in Attempting to Learn Whereabouts of Party to Litigation, for the Purpose of Obtaining Service by Publication*, 21 A.L.R.2d 929 (1952).

defendant cannot be found to serve or mail the summons and the facts shall appear by affidavit or otherwise to the satisfaction of the court, it may order that service be made by publication of summons[.]"), service by publication would not have been a "mere gesture."[8] That service by publication may be the only method available to Plaintiff would not, in itself, toll the statute of limitations period. *See Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1348–49 (4th Cir.1992) (holding that, because purpose of tolling statute is to remedy problem of locating a nonresident defendant before expiration of statute of limitations, tolling statute does not apply to adverse possession action because of statutory scheme allowing for service by publication on parties outside state in such actions), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993).

Thus, contrary to Plaintiff's contention, Defendant was amenable to service.

**8.** Enforcement of judgments obtained in Hawai'i in which notice was given by publication may pose difficulties when a plaintiff attempts to enforce the judgment in the defendant's country. Success varies depending on a number of factors, including whether the foreign country's local domestic law recognizes foreign judgments and allows such judgments to be enforced. As noted in a circular published by the Department of State, "[t]he general principle of international law applicable in [enforcement] cases is that a foreign state claims and exercises the right to examine judgments for four causes: (1) to determine if the court had jurisdiction; (2) to determine whether the defendant was properly served; (3) to determine if the proceedings were vitiated by fraud; and (4) to establish that the judgment is not contrary to the public policy of the foreign country." U.S. Dep't of State, Enforcement of Judgments (n.d.).

One commentator has said that, in Japan, "a Japanese defendant must have received service of a summons or other necessary orders to commence proceedings (other than by notice of publication) or have responded in the action without receiving service for the foreign judgment to be valid." Kikuchi, Shin, *Enforcement of Money Judgments* JAP–17 (Lawrence W. Newman, ed., 1998) (citing MinsohŌ [Code of civil procedure], art. 118(2)). The possible difficulty in enforcing a judgment so obtained, however, does not override one of the purposes' of limitations statutes, that is to avert the situation in which the statute of limitations is tolled for an indefinite period of time.

In *Shin,* this court agreed with the Alaska Supreme Court's view of a similar tolling provision:

## IX.

Plaintiff argues that Defendant "was impossible and/or difficult to locate [and a]ccordingly, ... Defendant ... falls into the exact category of difficult to locate defendants as contemplated in the enactment of HRS § 657–18." Again, as explained in *Shin,* this court ruled that for "impossible or difficult to locate" defendants, service may be made pursuant to HRS § 634–36. *Shin,* 89 Hawai'i at 6, 967 P.2d at 1064. *Shin* found that the defendant in that case was amenable for service, because under "HRS § 634–36 ... [the plaintiff] at all times during the two-year ... period of limitations ... could have served [the defendant] in person, by mail, or failing that, by publication." *Id.* at 7, 967 P.2d at 1065. *See First Hawaiian Bank v. Powers,* 93 Hawai'i 174, 188, 998 P.2d 55, 69 (App.2000) (determining that the tolling provisions of HRS § 657–18 do not apply when

> [T]he purpose of the statutes of limitations is to encourage promptness in the prosecution of actions and thus avoid the injustice which may result from the prosecution of stale claims. Statutes of limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses.... If a plaintiff can delay his [or her] action for a short period beyond two years, he [or she] could also wait twenty years or any other lengthy period of time.... Such a result is in intolerable conflict with the general purposes of the statute of limitations and the substituted service procedure.

89 Hawai'i at 6, 967 P.2d at 1064 (citing *Byrne v. Ogle,* 488 P.2d 716, 718–19 (Alaska 1971)). If the possible lack of enforceability in Japan were controlling so as to toll the statute of limitations under HRS § 657–18, an indefinite postponement of suit, which *Shin* sought to avoid, could result.

Moreover, tolling the statute of limitations based upon a perceived lack of enforceability of the judgment would necessarily apply in the case of other nations which seemingly eschew service by publication. Given the divergent internal laws of other countries, *see* U.S. Dep't of State, Enforcement of Judgments (n.d.) ("[F]oreign countries may find that the U.S. interpretation of [personal jurisdiction] differs from local foreign law, rendering the U.S. judgment unenforceable abroad."), resting personal service requirements upon such considerations would be impractical and would undermine the policies underlying limitations statutes.

the defendant is subject to the jurisdiction of the Hawai'i courts and amenable to service of process under Hawai'i's long-arm statutes, as set forth in HRS §§ 634–35 and 634–36). As discussed above, Defendant was amenable to service of process.

### X.

Plaintiff urges, in opposition to the granting of summary judgment, that whether a foreign defendant is amenable to Hawai'i's long-arm statute is a question of fact. In that connection, in Defendant's motion to dismiss or in the alternative for summary judgment, he contended that "Plaintiff's claims are time-barred by Plaintiff's failure to file the [Second] Complaint within the applicable statute of limitations." Explaining that "over three years and seven months [have] passed since the alleged incident on August 16, 1994 and the filing of Plaintiff's [S]econd Complaint on April 8, 1998," he declared that "Plaintiff's claim is barred because the statute of limitations has been exceeded by over one year and seven months."

In her response, Plaintiff asserted that "[HRS] § 657–18 tolls the running of the statute of limitations while a defendant is out of the state of Hawai'i" (boldfaced type and capitalization omitted) and "[the] statute of limitations was tolled while the first case[,] Civil No. 96–3372–01[,] was pending before this court" (boldfaced type and capitalization omitted), the same propositions she has raised on appeal and which we have addressed *supra*. With respect to her first ground, she urges that because of the difficulty in locating Defendant, "there are issues of fact as to whether or not Defendant ... was amenable to personal or substitute service of process." We cannot agree that such issues of material fact genuinely exist, inasmuch as HRS §§ 634–35(a)(2) and 634–36 and, when applicable, the Hague Convention, provided a means for substituted service of process of a nonresident defendant.[9] *See Richards v. Midkiff*, 48 Haw. 32, 39, 396 P.2d

49, 54 (1964) ("To create a 'genuine issue as to any material fact[,]' a question of fact presented ... as to a particular matter must be of such a nature that it would affect the result." (Citing *Lewis v. Atlas Corp.*, 63 F.Supp. 217 (D.N.J.1945), *aff'd*, 158 F.2d 599 (3d Cir.1946).)).

### XI.

Although Plaintiff failed to timely serve the First Complaint, she argues that the filing of the Second Complaint tolled the statute of limitations because the Second Complaint related back to the filing of the First Complaint.

To support her contention, Plaintiff cites to *Heiser v. Association of Apt. Owners of Polo Beach Club*, 848 F.Supp. 1482 (D.Hawai'i 1993). There, the plaintiff, Tom Heiser, while vacationing at a condominium on Maui, was injured during a boogie-boarding accident. *See id.* at 1483. Attempting to reach a settlement with the insurer of the condominium association, Heiser and his family did not file a complaint until just prior to the expiration of the statute of limitations period. *See id.* The plaintiffs did not attempt to serve any of the defendants with process but, instead, pursued settlement negotiations with the defendants. *See id.*

Prior to the expiration of the allowable time for service under the federal rules, the plaintiffs filed an ex parte motion seeking an extension of time for service, which was granted. *See id.* They then learned that one of the parties was incorrectly listed, and, rather than serve the original incorrect complaint, the plaintiffs filed an amended complaint, which was served prior to the expiration of the extended service period. *See id.* The amended complaint was not filed within the original statute of limitations period. *See id.*

The defendants moved to dismiss, on the ground that the statute of limitations had

---

9. In the same vein, Plaintiff argues that the actions of Defendant in contesting "the service of the two (2) Complaints upon him ... alone would entitle Plaintiff to denial of the" motion to dismiss. Plaintiff cites no authority for the proposition that Defendant's actions of contesting service renders him unamenable to service. In any event, the statutory allowance for substituted service of process rendered Defendant amenable to service, inasmuch as HRS § 634–36 provides for service in the event the defendant "cannot be found." *Shin*, 89 Hawai'i at 3, 967 P.2d at 1061.

expired. *See id.* They contended that the filing of the first complaint did not commence the action, inasmuch as (1) under HRS § 657–22,[10] the plaintiffs "did not have the intent to serve the original complaint," and (2) their lack of due diligence evidenced a lack of intent to serve the original complaint. *Id.* at 1484.

The federal district court interpreted HRS § 657–22 as "not requir[ing] a plaintiff to actually serve the defendant or to exercise due diligence. Instead, the threshold inquiry was said to be a determination of the plaintiff's intent at the time 'any process was issued.'" *Id.* at 1485.[11] Hence, it found that, "[d]espite the fact that the original complaint was never served,' the actions by [p]laintiffs evidence[d] both an intent to serve the original complaint as well as a continuing intent to pursue their cause of action." *Id.* Accordingly, the district court concluded that (1) the filing of the original complaint tolled the statute of limitations even though it was not served, *see id.*, and (2) pursuant to Federal Rules of Civil Procedure (FRCP) Rule 15(c),[12] the amended complaint related back to the original complaint. *See id.* at 1488. The court thus held that the filing of the amended complaint tolled the statute of limitations.

In contrast to *Heiser*, Plaintiff's First Complaint was dismissed, and the court denied Plaintiff's two subsequent motions for reconsideration of the dismissal. Plaintiff did not appeal the dismissal of the First Complaint or the denial of the motions for reconsideration but, instead, filed an entirely separate, yet identical, Second Complaint. According to Plaintiff, "HRS § 657–22 does not require [P]laintiff to actually serve the Defendant or to exercise due diligence," and, thus, her First Complaint was timely filed and her Second Complaint, identical to the First Complaint, should relate back to the filing of the First Complaint. However, the propriety of the First Complaint's dismissal is not before us for consideration because Plaintiff did not appeal the dismissal.

In any event, the amended complaint in *Heiser* cannot be equated with a second complaint for limitation purposes. The *Heiser* court applied FRCP Rule 15(c), which provides that an amended complaint relates back to the date of the original complaint. *See* 848 F.Supp. at 1487. The Hawai'i counterpart of this federal rule is set forth in HRCP Rule 15(c).[13] *See Mauian Hotel, Inc.*

---

10.   HRS § 657–22 (1993) states:

   **When process not commencement.** Upon any such matter being established, or upon its appearance in any other way that any process was issued without any intent that it should be served, the process shall not be deemed the commencement of an action within the meaning of this part [pertaining to limitations of personal actions] or section 663–3 [relating to deaths by wrongful acts.]

(Boldfaced type in original.) A review of case law and the legislative history regarding this section reflects no meaningful discussion of the legislature's purpose in enacting the section. This section was enacted in 1859 and was amended only once, in 1972, for mere technical changes to conform with court rules. *See* Sen. Stand. Comm. Rep. No. 626, in 1972 Senate Journal, at 1009; Hse. Stand. Comm. Rep. No. 333, in 1972 Senate Journal, at 774; 1972 Haw. Sess. Laws Act 105, § 1(n) at 410.

11.   Notwithstanding the federal district court's interpretation of HRS § 657–22, RCCH Rule 28 requires a plaintiff to exercise "a diligent effort to effect service" and mandates dismissal "if no service [is] made within 6 months after an action has been filed."

12.   FRCP Rule 15(c) (1999) states in pertinent part as follows:

An amendment of a pleading relates back to the date of the original pleading when

. . . .

   (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

   (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied. . . .

13.   HRCP Rule 15(c) (1999) provides:

   (c) Relation back of amendments. An amendment of a pleading relates back to the date of the original pleading when

   (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

   (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

   (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not

*v. Maui Pineapple Co., Ltd.*, 52 Haw. 563, 565, 481 P.2d 310, 312 (1971) (holding that an amended complaint related back to a timely asserted original complaint alleging the same factual situation). Because Plaintiff's Second Complaint cannot be said to be "[a]n amendment of a pleading[,]" HRCP Rule 15(c) provides no basis for relating the filing date of the Second Complaint to that of the First Complaint, even assuming *arguendo* that the First Complaint's dismissal was not final prior to the filing of the Second Complaint.

## XII.

▉ Plaintiff also asserts that because Judge Chang dismissed the First Complaint without prejudice, the statute of limitations was tolled to permit filing of the Second Complaint. Although Hawai'i courts have not yet addressed this issue, other courts have explained that, if a court dismisses an initial action, the applicable statute of limitations does not toll unless a savings statute [14] exists which provides for the filing of the second action within a specific amount of time, even if the statute of limitations would have otherwise expired. *See Chilcott Entertainment L.L.C. v. John G. Kinnard Co., Inc.*, 10 P.3d 723, 726 (Colo.Ct.App.2000) ("[T]he Colorado Supreme Court has stated that, absent a specific statutory provision, Colorado law does not allow for the tolling of a statute of limitations during the pendency of a prior action." (Citations omitted.)); *Clary Corp. v. Smith*, 949 S.W.2d 452 (Tex. Ct.App.1997) (holding that, when a lawsuit is dismissed for want of jurisdiction and later refiled, the new pleading does not relate back to the date the original lawsuit was filed and is a new lawsuit for statute of limitations purposes); *Sluka v. Herman*, 229 Neb. 200, 425 N.W.2d 891, 892 (1988) (observing that "[w]e know of no rule in Nebraska which declares that the running of a statute of limitations is tolled during the pendency of an action so as to permit a second filing [beyond the statute of limitations]," and that, although "[t]he filing of suit within the statutory period certainly satisfies the requirements of the statute of limitations[,]" "it is another thing to say that such filing tolls the statute[,]" and ultimately determining that "the better reasoned rule is that the filing of a petition does not toll the running of a statute of limitations for the purpose of bringing subsequent actions on the same set of facts, and we do so hold"); *Griffith v. White*, 259 Ala. 379, 66 So.2d 907, 909 (1953) ("In the absence of statute, a party cannot deduct from the period of the statute of limitations applicable to his [or her] case the time consumed by the pendency of an action in which he [or she] sought to have the matter adjudicated, but which was dismissed without prejudice as to him [or her]....."). There is no savings statute in Hawai'i. In the absence of such a statute, we consider the foregoing authorities persuasive.

In *Frasca v. United States*, 921 F.2d 450 (2d Cir.1990), the Second Circuit ruled that "the filing of a complaint does not toll the applicable statute of limitations beyond the 120–day period for service provided by [FRCP Rule] 4(j)." [15] *Id.* at 450. In that case, the plaintiff filed a complaint on July 8, 1988 against the United States government and served the wrong government agency on July 19, 1988. On September 30, 1988, the

---

be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

14. A "savings statute" is one that "allows for ... dismiss[al] of an action that originally was filed within the statute of limitations and then refil[ing] of] the action after the statute of limitations ordinarily would have expired." *Clark v. Visiting Health Prof'ls, Inc.*, 136 N.C.App. 505, 524 S.E.2d 605, 607 (2000); *see also Elzea v. Perry*, 340 Ark. 588, 12 S.W.3d 213, 216 (2000) (a savings statute applies "when the original statute of limitations period expires in the interim between the filing of the complaint and the time at which either nonsuit is entered or the judgment is reversed or arrested"); *Webb v. T.D.*, 275 Mont. 243, 912 P.2d 202, 207 (1996) (a savings statute "provides that if an action is commenced within the applicable statute of limitations, and is thereafter terminated in any other manner than by voluntary discontinuance, the plaintiff may commence a new action for the same cause after the expiration of the time so limited" (citations, quotation marks, and emphasis omitted)).

15. In 1993, the provisions of FRCP Rule 4 were reconstituted, and the applicable time provisions are now found within Rule 4(m).

United States filed its answer, alleging insufficiency of process. However, the plaintiff did not attempt to properly serve the defendant until February 22, 1989. After the United States moved to dismiss the complaint for failure to serve process within the 120–day period provided by FRCP Rule 4(j), the plaintiff amended her complaint and served it on August 14, 1989. The United States again moved to dismiss, and the district court granted the motion.

The Second Circuit affirmed the district court's dismissal, stating that, although "[FRCP] Rule 4(j) states that a dismissal for failure [to] properly serve the defendant within 120 days of the filing of the complaint is without prejudice, ... dismissal is proper even if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claim." *Id.* at 453.

Similarly, here, Judge Chang determined that Plaintiff failed to serve the First Complaint within the six-month period allotted by RCCH Rule 28 and within the extended periods granted by the court prior to his May 1, 1998 order granting dismissal without prejudice. Plaintiff did not appeal this order. Although Judge Chang's dismissal was without prejudice, the limitations period continued to run. By the time Plaintiff filed her Second Complaint, the statute of limitations had run, and the Second Complaint was time-barred.

## XIII.

For the foregoing reasons, the court's June 17, 1999 "Order Granting Defendant Ryu Muranaka's Motion to Dismiss Plaintiff's [Second] Complaint filed on April 8, 1998, or, in the Alternative, for Summary Judgment, filed on April 26, 1999" and the February 29, 2000 judgment are affirmed.